UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DIRK T. GRIFFIN, on behalf of himself and the tax payers of the State of California; PINNER CONSTRUCTION CO., INC., a California corporation; MECHANICAL TECHNOLOGY SYSTEMS, INC., a California corporation; MCGUIRE CONTRACTING, INC., a Nevada corporation,

Plaintiffs,

v.

MARK W. STRAUSS, an individual; DACM PROJECT MANAGEMENT, INC., a Florida corporation; ARCADIS U.S., INC., a Delaware corporation; JACOBS ENGINEERING GROUP INC., a Delaware corporation; KEVIN TYRELL, an individual; GIG PUKPRAYURA, an individual; QDG INCORPORATED, a California corporation; and, LOS ANGELES COMMUNITY COLLEGE DISTRICT, an agency organized and existing pursuant to the laws of the State of California; GABRIEL BUELNA, an individual; DAVID VELA, an individual; NICHELLE HENDERSON, an individual; STEVEN F. VERES, an individual; KELSEY K. IINO, an individual; ANDRA HOFFMAN, an individual; ERNEST H. MORENO, an individual and DOES 1-50, inclusive,

Defendants.

Case No.: 2:22-cv-06183 MEMF (PLAx)

**ORDER GRANTING IN PART DISTRICT DEFENDANTS' FIRST REQUEST FOR JUDICIAL NOTICE; DENYING DISTRICT DEFENDANTS' SECOND REQUEST FOR JUDICIAL NOTICE; GRANTING IN PART DISTRICT DEFENDANTS' MOTION TO DISMISS; DENYING DISTRICT DEFENDANTS' ANTI-SLAPP MOTION TO STRIKE; GRANTING IN PART PROFESSIONAL DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; GRANTING IN PART PROFESSIONAL DEFENDANTS' MOTION TO DISMISS; GRANTING PROFESSIONAL DEFENDANTS' MOTION TO STRIKE; GRANTING IN PART PROFESSIONAL DEFENDANTS' SPECIAL MOTION TO STRIKE [ECF NOS. 25, 25-1, 26, 28, 29, 30, 44]**

Before the court are three Requests for Judicial Notice, two Motions to Dismiss, a Rule 12(f) Motion to Strike, and two Anti-SLAPP Motions to Strike.

For the reasons discussed below, the District Defendants' First Request for Judicial Notice (ECF No. 25-1) is GRANTED IN PART; the District Defendants' Second Request for Judicial Notice (ECF No. 44) is DENIED; the District Defendants' Motion to Dismiss (ECF Nos. 25 and 26) is GRANTED IN PART; and the District Defendants' Anti-SLAPP Motion to Strike (also ECF Nos. 25 and 26) is DENIED. The Professional Defendants' Request for Judicial Notice (ECF No. 30) is GRANTED IN PART; the Professional Defendants' Motion to Dismiss (ECF No. 28) is GRANTED IN PART; the Professional Defendants' Motion to Strike (also ECF No. 28) is GRANTED; and the Professional Defendants' Special Motion to Strike (ECF No. 29) is GRANTED IN PART.

## BACKGROUND

### I. Factual Background[1]

#### A. The Parties

##### 1. The Plaintiffs

Plaintiff Dirk T. Griffin ("Griffin") is an individual residing in California. ¶ 7. He pays business license taxes and property taxes to the County of Los Angeles and City of Los Angeles. *Id.* Plaintiff Pinner Construction Co., Inc. ("Pinner") is a California corporation. ¶ 4. Pinner is licensed under the California Contractor's State License Board and does business in Los Angeles County. *Id.* Mechanical Technology Systems, Inc. ("MechTS"[2]) is a California Corporation. ¶ 5. MechTS is also licensed under the California Contractor's State License Board and does business in Los Angeles County. McGuire Contracting, Inc. ("McGuire," or collectively with Griffin, Pinner, and MechTS "Plaintiffs") is a Nevada corporation. ¶ 6. Like Pinner and MechTS, McGuire is licensed under the California Contractor's State License Board and does business in Los Angeles County. *Id.*

---

[1] All facts stated herein are taken from the allegations in the First Amendment Complaint by Plaintiffs Dirk T. Griffin; Pinner Construction Co., Inc.; Mechanical Technology Systems, Inc.; and McGuire Contracting Inc. unless otherwise indicated. ECF No. 12. The Court accepts these allegations as true at this stage.

[2] Plaintiffs' First Amended Complaint refers to Mechanical Technology Systems, Inc as "MTS." *See* ECF No. 12 ¶ 5. This Order will use "MechTS" to avoid confusion with the various motions to strike.

2. The “Professional Defendants”[3]

Defendant Mark W. Strauss (“Strauss”) is an individual. ¶ 8. Defendant DACM Project Management (“DACM”) is a Florida corporation authorized to do business in California. ¶ 9. Strauss is an employee of DACM. *Id.* Defendant Arcadis U.S., Inc. (“Arcadis”) is a Delaware corporation authorized to do business in California. ¶ 10. Defendant Jacobs Engineering Group Inc. (“Jacobs EG”) is also a Delaware corporation authorized to do business in California. ¶ 11. Defendant QDG Incorporated (“QDG”) is a California corporation authorized to do business in California. ¶¶ 12, 14. Defendants Kevin Tyrrell[4] (“Tyrrell”) and Gig Pukprayura (“Pukprayura”) are individuals, and employees of QDG. ¶¶ 12, 13.

3. The “District Defendants”[5]

Defendant Los Angeles Community College District (“LACCD”) is a Community College District organized pursuant to California law. ¶ 15. Defendants Gabriel Buelna (“Buelna”), David Vela (“Vela”), Nichelle Henderson (“Henderson”), Steven F. Veres (“Veres”), Kelsey K. Iino (“Iino”), Andra Hoffman (“Hoffman”), and Ernest H. Moreno (“Moreno,” or collectively with Buelna, Vela, Henderson, Veres, Iino, and Hoffman, the “Trustee Defendants”) are all individuals and current members of LACCD’s Board of Trustees. ¶ 16.

**B. The Los Angeles Valley College Project**

1. Background

On or around September 18, 2016, LACCD contracted with Pinner for the construction of a group of buildings on the campus of Los Angeles Valley College (the “Project”). ¶¶ 18, 120. The Project is a “large, multi-building, performing & media center,” which will house several theaters, a large lecture hall, classrooms, and other facilities. *Id.* It is a two-story structure with a partial

---

[3] Strauss, DACM, Arcadis, Jacobs EG, QDG, Tyrrell, and Pukprayura brought motions together, and are similarly situated, although they have separate counsel. *See* ECF No. 28. For simplicity, the Court will at times refer to them collectively as the “Professional Defendants.”

[4] Kevin Tyrrell was sued under the misspelled name “Kevin Tyrell” but has since clarified the correct spelling of his name. *See* ECF No. 28 at 2. The Court will use the correct spelling.

[5] LACCD and the Trustee Defendants brought motions together, are represented by the same counsel, and are somewhat similarly situated. For simplicity, the Court will at times refer to them collectively as the “District Defendants.”

basement, made from concrete and steel. *Id.* Pinner agreed to build the Project for a guaranteed maximum price ("GMP") of $78,508,391. ¶ 20. The Project was initially to be completed in 851 days. *Id.* Per the contract, if there were delays, Pinner would receive only limited additional compensation and if Pinner or Pinner's subcontractors caused delays, LACCD would receive liquidated damages. *Id.* LACCD "promised" to Pinner that LACCD would "carry a separate contingency for errors and omissions" in construction documents and agency requirements before Pinner agreed to these terms.

The Professional Defendants are third party construction managers, program managers, and architects. ¶ 21. The Professional Defendants were all under contract with LACCD to assist with building the Project in various capacities. *Id.* The Professional Defendants' pre-construction responsibilities included reviewing construction documents for errors and omissions and developing a construction budget. *Id.* The Professional Defendants are paid essentially hourly. ¶ 22. If the Project was delayed, the Professional Defendants would receive additional compensation, without limits. *Id.* And the Professional Defendants would not be charged liquidated damages if they caused a delay. *Id.*

2. <u>The Plot</u>

On or around March 9, 2017, errors and omissions in contract documents related to the project were discovered. ¶ 24. The Professional Defendants orchestrated a plot to save their professional reputations. *Id.* The Professional Defendants acted together and maliciously conspired to delay the project, blame Pinner for the delay, and earn increased compensation for themselves in the process. *Id.*

The Professional Defendants were aware from experience that one way to delay a public works project would be to interfere with approvals from the Department of State Architect ("DSA"). ¶ 25. Interfering with these approvals would delay the project in various ways, including by tying up the contractor's resources. *Id.*

The Professional Defendants were also aware of the terms of Pinner's contracts with LACCD, and knew that Pinner would bear the costs of delays. ¶ 27. The Professional Defendants

knew that even if Pinner pursued alternative dispute resolution ("ADR") in response to issues, Pinner would not be able to recover attorneys' fees and expert fees incurred in doing so. *Id.*

3. Actions Taken as Part of the Plot

*i. Splicing*

The Professional Defendants' first opportunity to effectuate their plot arose when the Project needed DSA approval for a change to plans to allow splicing of vertical reinforcing steel above 30 feet in the cast-in-place walls of the theater. ¶ 29. LACCD sought this approval by way of Construction Change Order ("CCD") No. 19 ("CCD 19"). ¶ 32. Only DSA could approve CCDs, and the Professional Defendants had no ability to affect the amount of delay for the splicing approval because those delays were fixed depending on how long it took the DSA to approve CCD 19. ¶ 30. DSA returned CCD 19 to LACCD on or around July 26, 2017, with notes indicating it was incomplete and should be resubmitted after corrections. ¶ 32. Strauss and Tyrrell sent reports to LACCD and LACCD's Board of Trustees indicating that CCD 19 should not be resubmitted, which were ratified by Pukprayura, DACM, Arcadis, and Jacobs EG.[6] ¶ 32. The reports stated that the proposed changes were prohibited by relevant contracts, would be "cost prohibitive," would trigger review of work already in place, would be "analogous to dropping an atomic bomb at the project," and that prohibiting the proposed change would not delay construction. *Id.* These written reports were sent via email and mail. *Id.*

These reports were false and fraudulent. *Id.* In fact, several facts suggested the splicing was proper and necessary. *See* ¶ 33(A)–(Q). Forcing Pinner to build without splicing would delay construction by significantly more than a year. ¶ 33(O). Further, the requested splicing is industry standard, the contract documents were ambiguous and did not prohibit it, the Professional Defendants did not contact the original designer for his view, the Professional Defendants had

[6] QDG, the seventh and final Professional Defendant, is not named specifically in this allegation, except to the extent that the allegation refers to the Professional Defendants (labeled "Racketeers") as a group. However, QDG employees Tyrrell and Pukprayura are named. The same is true of all subsequent factual allegations. Plaintiffs' First Amended Complaint only refers to QDG specifically in describing what QDG is (*see* ¶¶ 12-14, 17, 21) and in describing which causes of action are asserted against QDG. But Tyrrell and Pukprayura are specifically included in many factual allegations.

previously interpreted the contracts as allowing the requested splicing and not requiring DSA approval for it, resubmission of CCD would cost less than $22,000 and would not trigger review of other work, and the Professional Defendants had previously approved construction schedules that authorized splicing.

Based on the Professional Defendants' actions, LACCD and LACCD's Board of Trustees opted not to resubmit CCD 19. ¶ 34. LAACD ordered Pinner to commence work without splices above 30 feet on November 21, 2017. Delays that resulted from this decision led the Professional Defendants earning an estimated $2,509,382. *Id.*

*ii. 100-Day Delay*

On February 26, 2018, Pinner notified the Professional Defendants that embeds at the south side of the proscenium opening would need to be redesigned. ¶ 35. LACCD had previously submitted a CCD (CCD 51) for redesign of items at the north side of the proscenium opening, and the embeds at the south side needed redesign for similar reasons. *Id.* The Professional Defendants took 100 days to acknowledge that Pinner was correct and accordingly request DSA approval. Later, on September 19, 2018, Strauss and Tyrrell submitted a false and fraudulent Change Order Justification Form requesting that the Project's completion date be extended for 100 days due to "Unforeseen Existing Conditions," with DACM's, Arcadis's, and Jacobs EG's ratification. *Id.* In fact, this 100-day delay was caused by errors and omissions by the Professional Defendants. *Id.* In reliance on the Professional Defendants' representations, LACCD and LACCD's Board of Trustees approved a change order extending the completion date by 100 days. *Id.* The contract extensions that resulted led to $547,900 in additional compensation for the Professional Defendants.

*iii. $10,705,820 Change Order and Mediation*

On November 12, 2018, Pinner submitted a change order for TIAs 1 – 5.[7] ¶ 36. The change order sought an additional $10,705,820 in compensation for Pinner. *Id.* This change order addressed

---

[7] "TIA" is not a defined term in Plaintiffs' First Amended Complaint. The Court understands "TIA" or "TIAs" to refer to Time Impact Analysis or Analyses, and understands that contractors perform TIAs to determine the impact of changes on project schedules in order to justify delay, justify increased compensation, or avoid liquidated damages.

the issues with splicing and embeds discussed above. *Id.* Strauss and Tyrrell sent false and fraudulent reports to LACCD and LACCD's Board of Trustees stating that Pinner's request for $10,705,820 was meritless. ¶ 37. DACM, Arcadis, and Jacobs EG ratified these reports. *Id.* In creating and sending these reports, Strauss and Tyrrell intentionally concealed the true facts about the splicing and embeds issues and concealed that their opposition to the change order violated applicable law. *Id.* In reliance on Strauss's and Tyrrell's reports, LACCD refused to pay Pinner $10,705,820, and refused to make any offer of settlement. ¶ 37.

In July and August of 2019, Strauss and Tyrrell sent additional reports to LACCD and LACCD's Board of Trustees that recommended no offer of settlement to Pinner on Pinner's request for $10,705,820. ¶ 43. Relying on these reports, LACCD made no offer of settlement. ¶ 44.

Pinner mediated these claims in September 2019. ¶ 45. Throughout the mediation, the Professional Defendants continued to misrepresent facts. *Id.* LACCD eventually offered a settlement of $5,000,000, over the objections of the Professional Defendants. *Id.* Pinner accepted this offer. *Id.* Pinner would have accepted this offer in December 2018 if it had been offered at that time. *Id.* A settlement in 2018 would have allowed both Pinner and LACCD (and therefore, California taxpayers) to avoid incurring the costs associated with the mediation. ¶¶ 27, 48.

iv. *Arbitration of Additional Claims*

On or around June 5, 2020, Pinner submitted additional claims for other TIAs, seeking an additional $5,877,291 for 215 days of additional delay and for other costs resulting from the withdrawal of CCD 19 ($2,091,506 for TIA 6, $2,400,853 for TIA 7, and $1,384,932 for COP 292[8]). ¶ 49. Strauss and Tyrrell sent false and fraudulent reports to LACCD and LACCD's Board of Trustees stating that Pinner's request for $5,877,291 was meritless. ¶ 50. DACM, Arcadis, and Jacobs EG ratified these reports. *Id.* Relying on these reports, LACCD made no offer of settlement on these claims. In September, October, and November of 2020, Strauss and Tyrrell sent additional "false and fraudulent" reports to LACCD and LACCD's Board of Trustees recommending no offer

[8] "COP" is not a defined term in Plaintiffs' First Amended Complaint. The Court is unaware of its meaning in this context, but the meaning of this term does not affect the Court's holding.

of settlement. ¶ 52. DACM, Arcadis, and Jacobs EG ratified these additional reports. *Id.* These reports concealed the true facts about CCD 19. *Id.* LACCD relied on these reports and made no offer of settlement. *Id.*

Arbitration on these claims occurred between April 6, 2021 and September 23, 2021. ¶ 54. During the arbitration hearing, Plaintiffs learned for the first time of the the conspiratorial acts of the Professional Defendants and the false and fraudulent misrepresentations and concealments. *Id.*

The arbitrator awarded Pinner $3,172,612 in damages. *Id.* The arbitrator found that the Professional Defendants had breached the covenant of good faith and fair dealing in their actions related to CCD 19. *Id.*

Pinner and its subcontractors would have accepted a settlement offer of $3,172,612 if it had been made in June of 2020. *Id.*

*v.* *Wood from Project Site*

The original specifications called for wood harvested from the Project site to be used as paneling for the main theater and lobby. ¶ 64. The Professional Defendants were aware that the specified wood could never be made to pass fire retardant requirements. *Id.* Despite this knowledge, the Professional Defendants delayed the Project 436 days through the guise of multiple failed attempts to use the requested on-site materials. *Id.*

On approximately March 15, 2022, Pinner submitted TIA 10 for $12,741,996, to account for the 436 days of delay related to the wood redesign. ¶ 65. This has not yet been formally rejected, but Strauss and Tyrrell have sent false and fraudulent reports to LACCD and LACCD's Board of Trustees stating that Pinner's request for $12,741,996 is meritless. *Id.* DACM, Arcadis, and Jacobs EG ratified these reports. *Id.*

*vi.* *Additional TIAs*

On approximately March 15, 2022, Pinner submitted two more TIAs seeking an additional $4,553,936 ($1,396,839 for TIA 8 and $3,157,097 for TIA 9). ¶ 60. These addressed 139 days of delay due to additional impacts on structural steel caused by the withdrawal of CCD 19. *Id.* These impacts occurred between April and October 2019. *Id.* These have not yet been formally rejected, but as with others, Strauss and Tyrrell have sent "false and fraudulent" reports to LACCD and

LACCD's Board of Trustees stating that Pinner's request for $4,553,936 is meritless. ¶ 61. DACM, Arcadis, and Jacobs EG ratified these reports. *Id.*

*vii. Other Actions Related to the Plot*

Beginning in December 2018, the Professional Defendants took various actions to harm Pinner and delay construction. The Professional Defendants unreasonably reduced Pinner's monthly payment applications. ¶ 40. The Professional Defendants delayed construction through non-responsive, combative, deceptive, incomplete and/or misleading RFI[9] responses, including by quoting contract language out of context, and forcing Pinner and its subcontractors to assume responsibility for design in violation of applicable provisions of the Public Contracts Code. ¶ 41. Pinner has submitted over 2,000 RFIs, and the vast majority of the Professional Defendants' responses to these RFIs were willfully late, non-responsive, combative, deceptive, misleading and otherwise intentionally failed to provide the design direction Pinner and its subcontractors needed to complete their work on the Project in a timely and efficient manner. *Id.* Further, the Professional Defendants delayed construction through incomplete and/or ever-changing responses to submittals, including by quoting contract language out of context and/or preventing Pinner and its subcontractors from ordering needed materials. ¶ 42. All of these actions commenced in or around December 2018. ¶¶ 40-42.

The Professional Defendants instructed Pinner's subcontractor MechTS to provide certain drawings to redesign roof air conditioning duct supports, under the pretext that it was contractually required. ¶ 58. The statements giving this instruction were false. *Id.* MechTS provided the drawings, and the Professional Defendants rejected the submittal. *Id.* MechTS resubmitted as directed. *Id.* The Professional Defendants caused further delay by demanding minor clerical and detailing changes through improper use of a "Revise and Resubmit" procedure. *Id.* This caused MechTS and Pinner to incur costs. *Id.*

---

[9] "RFI" is not a defined term in Plaintiffs' First Amended Complaint. The Court understands "RFI" or "RFIs" to refer to Request(s) for Information, and understands that contractors submit RFIs in order to clarify plans, specifications, contracts, or other items.

The Professional Defendants also caused issues with the installation of a rain gutter system. ¶ 59. Pinner warned the Professional Defendants that the rain gutter system was a safety hazard and could not be installed as designed. *Id*. Despite the warnings, the Professional Defendants directed Pinner to install the rain gutter as designed. *Id.* After Pinner attempted to do so, DSA stopped the installation and instructed Professional Defendants to redesign it. *Id.* This caused Pinner to incur additional costs. *Id.*

Other potential causes of delay arose September of 2021. ¶ 68. First, the Professional Defendants delayed in providing design instructions regarding changes to audio-visual software and equipment and door hardware, after being informed by Pinner that changes were necessary due to errors and omissions in the original design. *Id.* Second, the Professional Defendants demanded that "J" channels be removed from one building and replaced. ¶ 70. These were part of the original plans, and pre-engineered for the "Trespa system." *Id.* The Professional Defendants demanded the "J" channels be removed and replaced with an untested system. *Id.* This was done to increase the Professional Defendants' compensation. *Id.* The Professional Defendants refused a verbal request from DSA to submit a CCD related to this change. DSA eventually made a written comment required CCD, but the Professional Defendants corruptly persuaded the DSA representative to change his written comment. *Id.*

4. <u>Extension of LACCD's Contracts with The Professional Defendants</u>

On or around August 3, 2022, the Trustee Defendants decided to extend LACCD's contract with the Professional Defendants.[10] ¶ 151. This decision was made despite the arbitrator's decision that the Professional Defendants had breached the covenant of good faith and fair dealing. *Id.*

## II. Procedural History

Plaintiffs filed their Complaint in Los Angeles County Superior Court on August 2, 2022. ECF No. 1-1. Defendants removed to this Court on August 30, 2022. ECF No. 1. Plaintiffs filed a

---

[10] Griffin has sought to confirm whether the contracts with the Professional Defendants have actually been extended, and has been unable to confirm this. FAC ¶ 151. If he discovers that the contracts were not actually extended, Griffin intends to Dismiss the fifth cause of action (a taxpayer action for breach of fiduciary duty against the Trustee Defendants, *see* FAC ¶¶ 145–153). *Id.* Griffin also intends to dismiss claims against any Trustee Defendant who individually voted against the extension. *Id.*

First Amended Complaint on September 6, 2022. ECF No. 12 ("FAC"). Plaintiffs bring seven causes of action: (1) a taxpayer action pursuant to California Code of Civil Procedure § 526a ("Section 526a") and common law for breach of fiduciary duty against the Professional Defendants, seeking a money judgment on behalf of the taxpayers of the state of California (FAC ¶¶ 77–84); (2) a claim for violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1962(c)), "RICO") against the Professional Defendants, seeking compensatory and treble damages (FAC ¶¶ 85–117); (3) a claim for intentional interference with contract against the Professional Defendants, seeking compensatory and punitive damages (FAC ¶¶ 118–135); (4) a taxpayer action pursuant to Section 526a and common law seeking a permanent injunction ordering LACCD to set aside contracts with the Professional Defendants, brought against the LACCD and the Professional Defendants (FAC ¶¶ 136–144); (5) a taxpayer action pursuant to Section 526a and common law for breach of fiduciary duty against the Trustee Defendants (FAC ¶¶ 145–153); (6) a claim pursuant to the California Unfair Competition Law (Bus. Prof. Code. § 17203, "UCL") against LACCD and the Professional Defendants, seeking an injunction requiring LACCD to suspend or set aside any extension of the Professional Defendants' contracts (FAC ¶¶ 154–159); and (7) a claim for implied contractual indemnity against the Professional Defendants (FAC ¶¶ 160–165).

On October 12, 2022, the District Defendants[11] filed a Motion to Dismiss and Anti-SLAPP Motion to Strike Plaintiffs' Fourth, Fifth, and Sixth Causes of Action. ECF No. 25 ("District Defendants' Motion to Dismiss and Motion to Strike" or "District Motion"). The same day, the District Defendants filed an amended version of their Motion to Dismiss and Motion to Strike. ECF No. 26 ("District Defendants' Amended Motion to Dismiss and Motion to Strike" or "District Amended Motion"). The District Defendants also filed a Request for Judicial Notice on October 12, 2022. ECF No. 25-1 ("District Defendants' First Request for Judicial Notice" or "District RNJ1"). Plaintiffs filed an Opposition to the District Defendants' Motion to Dismiss and Motion to Strike on April 7, 2023. ECF No. 40 ("Opposition to District Defendants' Motion to Dismiss and Motion to

---

[11] As defined above, the "District Defendants" are Defendants Los Angeles Community College District, Gabriel Buelna, David Vela, Nichelle Henderson, Steven F. Veres, Kelsey K. Iino, Andra Hoffman, and Ernest H. Moreno. *See supra* note 1.

Strike" or "Opp'n to District Motion"). Plaintiffs did not file any opposition to the District Defendants' First Request for Judicial Notice. *See* ECF Nos. 26-45. The District Defendants filed a Reply in Support of their Motion to Dismiss and Motion to Strike on April 14, 2023. ECF No. 41 ("District Reply"). The District Defendants filed a second Request for Judicial Notice on May 24, 2023. ECF No. 44 ("District Defendants' Second Request for Judicial Notice" or "District RNJ2"). Plaintiffs filed an opposition to the District Defendants' Second Request for Judicial Notice on May 31, 2023. ECF No 47.

On October 13, 2023, the Professional Defendants[12] filed a Motion to Dismiss the First Amended Complaint (Fed. R. Civ. P. 12(b)(6)) and Motion to Strike (Fed. R. Civ. P. 12(f)), as well as a Memorandum of Points and Authorities in Support. ECF No. 28 ("Professional Defendants' Motion to Dismiss and Motion to Strike"); ECF No. 28-1 ("Professional Defendants' Motion to Dismiss and Motion to Strike MPA" or "Professional Motion to Dismiss"). Also on October 13, 2023, the Professional Defendants filed a Special Motion to Strike Pursuant to California Civil Procedure Code Section 425.16, *et seq.*, as well as a Memorandum of Points and Authorities in Support. ECF No. 29 ("Professional Defendants' Special Motion to Strike"); ECF No. 29-1 ("Professional Defendants' Motion to Strike MPA" or "Professional Motion to Strike"). Finally, also on October 13, 2023, the Professional Defendants filed a Request for Judicial Notice. ECF No. 30 ("Professional Defendants' Request for Judicial Notice" or "Professional RJN").

Plaintiffs filed Oppositions to both (1) the Professional Defendants' Motion to Dismiss and Motion to Strike and (2) the Professional Defendants' Special Motion to Strike on April 7, 2023. ECF No. 39 ("Opposition to Professional Defendants' Motion to Dismiss and Motion to Strike" or "Opp'n to Professional Motion to Dismiss"); ECF No. 38 ("Opposition to Professional Defendants' Special Motion to Strike" or "Opp'n to Professional Motion to Strike"). Plaintiffs did not file an opposition to the Professional Defendants' Request for Judicial Notice. *See* ECF Nos. 31– 45. The Professional Defendants filed Replies in Support of (1) their Motion to Dismiss and Motion to Strike

---

[12] As defined above, the "Professional Defendants" are Mark W. Strauss; DACM Project Management, Inc.; Arcadis U.S., Inc.; QDG Incorporated; Jacobs Engineering Group, Inc.; Kevin Tyrrell; and Gig Pukprayura. *See supra* Note 3.

and (2) their Special Motion to Strike on April 14, 2023. ECF No. 43 ("Professional Defendants' Motion to Dismiss and Motion to Strike Reply" or "Professional Motion to Dismiss Reply"); ECF No. 42 ("Professional Defendants' Special Motion to Strike Reply" or "Professional Motion to Strike Reply").

The Court held a hearing on all motions addressed by this Order on June 1, 2023. At the hearing, counsel for Plaintiffs clarified several points. First, Plaintiffs conceded that Defendant Jacobs EG (Jacobs Engineering Group Inc.) is the incorrect entity, and that Plaintiffs should have instead sued Jacobs Project Management Co. ("JPMG"), because JPMG contracted with LACCD and was involved in the Project, while Jacobs EG was not. The Professional Defendants raised this point in their Motion to Dismiss, and noted that Plaintiffs had already agreed to "name the proper Jacobs entity" when the Motion to Dismiss was filed. *See* Professional Motion to Dismiss at 3 n.4. However, as Plaintiffs explained in the hearing, Plaintiffs requested that the Professional Defendants stipulate for Plaintiffs to amend their complaint prior to motion practice. The Professional Defendants refused, and instead pursued their various motions described above, despite Plaintiff's offer to amend and cure some issues. Second, Plaintiffs agreed at the hearing to strike the allegations related to the Harbor Project. Third, Plaintiffs conceded at the hearing that not all of the Professional Defendants could have joined the "plot" on the date alleged—March 9, 2017—as some Professional Defendants did not join the project until after that date. The Professional Defendants argued this in their Motion to Dismiss. *See* Professional Motion to Dismiss at 12. Plaintiffs explained at the hearing that, as with the conflation of the Jacobs entities, Plaintiffs offered to amend their complaint and resolve these issues prior to motion practice. The Professional Defendants refused to allow Plaintiffs to amend. When asked at the hearing, the Professional Defendants raised no compelling arguments as to why the Court should not allow amendment to address these issues.[13]

---

[13] The parties are reminded of the following portion of the Court's Standing Order:

> **Many motions to dismiss or strike can be avoided if the parties confer in good faith** as required by Local Rule 7-3, especially for perceived defects in a complaint, answer, or counterclaim that can be corrected by amendment. *See Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (noting that where a motion to dismiss is granted, a district

**DISTRICT DEFENDANTS' FIRST AND SECOND REQUESTS FOR JUDICIAL NOTICE (ECF NOS. 25-1, 44)**

**I. Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).

/ / /

/ / /

---

> court should grant leave to amend unless it is clear the complaint cannot be saved by amendment). Moreover, a party has the right to amend the complaint "once as a matter of course at any time before a responsive pleading is served." FED. R. CIV. P. 15(a). Even after a complaint has been amended or a responsive pleading has been served, the Federal Rules of Civil Procedure provide that leave to amend should be "freely given when justice so requires." FED. R. CIV. P. 15(a). Indeed, the Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).
>
> Consequently, parties should carefully consider and weigh an opponent's contentions as to the deficiencies in a pleading. **The Court expects that, in most instances, the parties will agree to any amendment that would cure the defect.**

Standing Order, VIII.A. (emphasis added). The Professional Defendants are admonished that failure to comply with this aspect of the Standing Order in the future will result in appropriate consequences, which may be substantial.

## II. <u>Discussion</u>

The District Defendants request judicial notice of eleven documents. *See* District RNJ1 (describing Exhibits A–J); District RNJ2. The first three are (A) a copy of the Construction Services Agreement between Pinner and LACCD (the "Agreement"); (B) the Settlement Agreement executed on December 5, 2019 between Pinner and the District in connection with TIAs 1–5; ("Settlement Agreement") and (C) the Arbitration Aware issued on April 1, 2022 in connection with TIAs 6–7 and COP 292 ("Arbitration Award"). *See* District RNJ1. The remainder relate to various properties purportedly owned by Griffin, Griffin's place of residence, and other information about LACCD and its funding sources. *See* District RNJ1; District RJN2. Plaintiffs have not opposed the District's Requests for Judicial Notice and have not contested the authenticity of any of these items.

The Court will take notice of items A–C, but not the remainder. Although there appears to be no dispute as to the authenticity of any item, that alone is not sufficient. On a motion to dismiss, the Court may only consider items that are referenced in the complaint and central to the complaint. *See Corinthian Colleges*, 655 F.3d at 998. The Complaint makes reference to the Agreement, the Settlement Agreement, and the Arbitration Award. *See* FAC ¶¶¶ 18, 45, 54; *see also Corinthian Colleges*, 655 F.3d at 998. All three of these items appear central to Plaintiffs' claims. *See Corinthian Colleges*, 655 F.3d at 998. Accordingly, these items are properly subject to judicial notice on a motion to dismiss. The same cannot be said about the other items the District Defendants seek judicial notice of. Although they may be relevant to certain claims and may be subject to judicial notice at a later stage, the Court cannot take judicial notice of them while considering a Motion to Dismiss, because they are neither referenced in the complaint nor central to it. *See Corinthian Colleges*, 655 F.3d at 998.

***

**Accordingly, the District Defendants' First Request for Judicial Notice is GRANTED IN PART and the District Defendants' Second Request for Judicial Notice is DENIED.**

/ / /

/ / /

/ / /

## DISTRICT DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (ECF NOS. 25, 26)

### I. Applicable Law

The District Defendants bring their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and their Motion to Strike pursuant to California's Anti-SLAPP Statute, California Code of Civil Procedure § 425.16 ("Section 425.16").

#### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

/ / /

/ / /

**B. Section 425.16**

California Code of Civil Procedure Section 425.16 permits a special motion to strike a strategic lawsuit against public participation ("SLAPP"). The statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1); *Kashian v. Harriman*, 120 Cal. Rptr. 2d 576, 578 (Ct. App. 2002). Federal courts give full effect to the Anti-SLAPP statute. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).

Anti-SLAPP motions are subject to a two-step burden shifting test. First, the defendant must make a threshold showing that the challenged claim arises from an "act in furtherance of the defendant's rights of petition or free speech" within the meaning of California Code of Civil Procedure section 425.16(e). *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017); *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016). An "act in furtherance" includes, in part, "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Jordan-Benel*, 859 F.3d at 1188 (quoting Cal. Civ. Proc. Code § 425.16(e)(4)).

If the prima facie case is satisfied, the burden shifts to the plaintiff to establish a reasonable probability of prevailing on the merits of the challenged claim. *Id.*; *Park v. Bd. of Trs. of Cal. State Univ.*, 393 P.3d 905, 907 (Cal. 2017). This is a low burden. *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) ("In the anti-SLAPP context, 'probability' is a low bar."); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) ("[T]he second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong."). If the plaintiff cannot make this showing, the claim is stricken. *Jordan-Benel*, 859 F.3d at 1188–89.

Under the second step, federal courts must apply "different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). A defendant's special motion to strike based on alleged deficiencies in a plaintiff's complaint is treated in the same manner as a motion under Rule 12(b)(6). *Id.* at 834.

If a defendant prevails on Anti-SLAPP motion—in contrast to prevailing on a Rule 12(b)(6) motion—the defendant "shall be entitled to recover [] attorney's fees and costs" Cal. Civ. Proc. Code § 425.16(c)(1).

## II. Discussion

The District Defendants encompass two differently situated groups, which are purportedly subject to different forms of liability under different causes of action. First, the District Defendants include LACCD itself, which is a community college district, a public entity. FAC ¶ 15. Second, the District Defendants include the Trustees of LACCD, who are individuals. *See id.* ¶ 16. The Court will analyze the arguments as to the Trustee Defendants and LACCD separately.

### A. Analysis of Immunities

#### 1. LACCD is not immune from the fourth cause of action, because it seeks an injunction

Under California law, public entities generally are immune from liability for injuries resulting from the entities' acts or omissions "[e]xcept as otherwise provided by statute." *See* Cal. Gov't Code § 815 ("Section 815"). However, this immunity does not affect the "right to obtain relief *other than* money or damages against a public entity." *See* Cal. Gov't Code § 814 ("Section 814") (emphasis added). Here, the fourth cause of action seeks an *injunction* against LACCD, *not* money damages. FAC ¶¶ 136–144. Section 815's immunity from liability does not apply to the fourth cause of action, as this cause of action seeks an injunction that would require setting aside contracts with the Professional Defendants.[14]

California courts have placed limits on what sorts of injunctions are permitted against public entities, and have held that despite Section 814, public entities are immune from injunctions that would "impose financial burdens" on public entities. *See Schooler v. State of California*, 85 Cal. App. 4th 1004, 1013–15 (2000). But here, looking only to the allegations in the Complaint, there is

---

[14] Another federal district court recently analyzed the interaction between Sections 814 and 815, and came to the same conclusion: that public entities generally are not immune from suits seeking injunctions. *See Montoya v. City of San Diego*, 434 F. Supp. 3d 830, 842 (S.D. Cal. 2020).

no evidence that the injunction sought would impose a financial burden. *See* ¶¶ 136–144. Accordingly, Section 814 applies here, and LACCD is not immune from this cause of action.

The District Defendants' Motion to Dismiss the fourth cause of action is DENIED as to this ground.

2. Plaintiffs concede that LACCD is immune from the sixth cause of action.

Plaintiffs named LACCD as a defendant as to the sixth cause of action pursuant to the California UCL. *See* FAC ¶ 154–159. The District Defendants argue that LACCD is immune from UCL claims as a matter of law, because LACCD is a public entity. *See* District Amended Motion at 26-27. In their Opposition, Plaintiffs conceded that LACCD is immune, but argued that the Professional Defendants are not. *See* Opp'n to District Motion at 15-16 ("LACCD's request to dismiss the sixth cause of action should be granted but limited solely to dismissing LACCD from the cause of action.").

Accordingly, the District Defendants' Motion to Dismiss is GRANTED IN PART as to the sixth cause of action with respect to LACCD. The Motion is GRANTED WITHOUT LEAVE TO AMEND. *See Manzarek*, 519 F.3d at 1031.

The Court will analyze separately whether the sixth cause of action should also be dismissed as to the Professional Defendants.

3. The fifth cause of action against the Trustee Defendants cannot be dismissed based on immunity.

Public officials and employees in California. are not entitled to the same broad immunity that public entities enjoy. Public entities are broadly immune from liability unless a specific statute provides otherwise, pursuant to Section 815.[15] *See* Cal. Gov't Code § 815. Public officials or employees, on the other hand, are liable just as a private person would be unless a specific statute provides for immunity. *See* Cal. Gov't Code § 820. Accordingly, to show immunity, the Trustee Defendants must point to a specific statute that makes them immune for the alleged conduct at issue.

[15] There is a specific exception for injunctive relief, as described above. See Cal. Gov't Code § 814.

The Trustee Defendants argue that several apply, but as described below, no statute the Trustee Defendants point to provides immunity at the motion to dismiss stage for the conduct alleged here.

*a. Section 820.2 does not provide immunity at this stage.*

Public officials in California are immune from liability for acts or omissions that are "the result of the exercise of the discretion vested in them," unless "otherwise provided by statute." Cal. Gov. Code § 820.2 ("Section 820.2"). There are two issues to analyze in determining whether the immunity applies: whether the act or omission in question resulted from the exercise of discretion, and whether some other statute abrogates immunity. *See Caldwell v. Montoya*, 10 Cal. 4th 972, 980–89 (1995).

Under California law as interpreted by the Ninth Circuit, two things must be shown for an act or omission to result from an exercise of discretion. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012). First, the act or omission in question must be a "[q]uasi-legislative policy decision[]," and not a "lower level decision[] that merely implement[s] a basic policy already formulated." *Id.* Second, the act or omission must be "made by an employee who 'consciously balanc[ed] risks and advantages.'" *Id.* (quoting *Johnson v. State*, 69 Cal. 2d 782, at 795 n.8 (1968)) (alteration in original). A defendant asserting immunity bears the burden of establishing that they performed this balancing and made a "considered decision." *Id.* This second question is typically not well suited for disposition on a motion to dismiss—where only the plaintiffs' allegations may be considered—as these allegations rarely make clear that the defendant will meet its burden on this question. *See id.* at 640.

Here, the Trustee Defendants' decision to make and extend the contracts with the Professional Defendants was a quasi-legislative decision that would be entitled to immunity. *See Caldwell*, 10 Cal. 4th at 989 ("the decision by members of an elected school board whether to renew the contract of the district's superintendent is a basic policy decision, and thus a discretionary act of the kind for which public employees are entitled to personal immunity under section 820.2"). However, based on the allegations in the Complaint, the Court cannot hold that it was a "considered decision" entitled to immunity. *See AE ex rel. Hernandez*, 666 F.3d at 639. Plaintiffs alleged as follows:

> GRIFFIN is informed and believes that TRUSTEES, and each of them, breached that fiduciary by disregarding the binding arbitration award and instead extending the contracts for STRAUSS, DACM, TYRELL, PUKPRAYURA and QDG on or about August 3, 2022 in violation of their public trust, in excess of their authority, in violation of their mandatory duty and failing to act with due care.

FAC ¶ 151.

Had the Plaintiffs merely alleged that the Trustee Defendants "disregard[ed] the binding arbitration award," it is possible that the Court could find that "[a] fair reading of the instant complaint reveals allegations that" the Trustee Defendants made "an actual, conscious, and considered collective policy decision to" disregard the arbitration award and instead extend the contracts. *See Caldwell*, 10 Cal. 4th at 984. However, the Plaintiffs have alleged that the Trustee Defendants "fail[ed] to act with due care." FAC ¶ 151. Just as with the allegations in *AE* that the individual defendants acted negligently, this is inconsistent with the concept of a "considered decision" and therefore the Trustee Defendants are not entitled to immunity at this stage. *See AE ex rel. Hernandez*, 666 F.3d at 639–40. Put another way, crediting this allegation as true and drawing all inferences in favor of Plaintiffs, the Court cannot say the Trustee Defendants have met their burden of showing that they consciously balanced risk and advantages and made a considered decision. *See id.* at 639. At this stage, the Trustee Defendants are not entitled to immunity. *See id.* The Court need not reach the second issue of whether Section 526a abrogates immunity, as the Trustee Defendants have not shown they are entitled to immunity at the first stage.

At the hearing, the District Defendants sought to distinguish *AE* on the grounds that the *AE* plaintiff brought a *statutory* negligence claim. *See AE ex rel. Hernandez*, 666 F.3d at 635. Here, on the other hand, the claims are brought under Section 526a and common law, with allegations that sound of common law negligence. The District Defendants expressed concern that a merely alleging *common law* negligence should not be sufficient to bypass Section 820.2, as Section 820.2 makes clear that immunity can only be abrogated by statute. *See id.* But this argument misunderstands the reasoning of *AE*. *AE* did not hold that Section 820.2 provided immunity but that immunity was abrogated by the statute that governs statutory negligence claims. Rather, *AE* made clear that Section 820.2 never applied at all to the facts alleged, and did not need bypassing or abrogation, because the

*AE* complaint suggested that the *AE* defendants had not consciously balanced risks and advantages, and such allegations were taken as true at the motion to dismiss stage. *See AE ex rel. Hernandez*, 666 F.3d at 639–40. The court did no analysis on whether the negligence statute abrogated immunity. *See id.* Instead, the court explained that defendants "were not entitled to dismissal [of the claims] on the basis of discretionary act immunity for the *allegedly negligent placement and supervision*." *Id.* at 640 (emphasis added). The negligence statute was not important. The *acts* were allegedly negligent, and allegedly negligent acts are typically not entitled to dismissal based on discretionary immunity at the motion to dismiss stage, because such allegations will typically support the possible inference that the defendants failed to do the conscious balancing that would entitle them to immunity. *See id.* So too here.

To be clear, after further development of the facts and the pleadings, the Trustee Defendants may be able to show that they are entitled to this statutory immunity, by showing that they consciously balanced risks and advantages. The Court will consider that question at that time.

*b. Sections 821 and 821.2 do not provide immunity for the alleged conduct.*

The Trustee Defendants also argue they are immune under California Government Code 821 ("Section 821") and California Government Code 821.2 ("Section 821.2"). District Amended Motion at 28. But neither appears to apply.

Section 821 states that "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment." Cal. Gov. Code § 821. The key question is whether the Trustee Defendants' decision to extend contracts with the Professional Defendants is an "enactment" under the meaning of Section 821. FAC ¶¶ 150–52. The Court finds it is not. California case law suggests that an "enactment" is a law or ordinance, not a government contract. *See Dana Corp. v. State of California*, 103 Cal. App. 3d 424, 426–27 (Ct. App. 1980) (holding that Section 821 controls and leads to "the basic rule that the state is not liable for the effect of *legislation* enacted" (emphasis added)); *Wood v. Cnty. of San Joaquin*, 111 Cal. App. 4th 960, 4 Cal. Rptr. 3d 340 (2003), as modified (Sept. 5, 2003) (describing "failing to adopt an enactment" as "failure to adopt local ordinances or something similar," and noting that "immunity is necessary to protect the essential governmental function of making laws," in interpreting a similar

code section that provides public entities with immunity for "adopting or failing to adopt an enactment."). The Court is aware of no authority extending "enactment" to cover the execution of government contracts, and the District Defendants provided none.

Section 821.2 grants public employees immunity for "an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization." Cal. Gov. Code § 821. Here, the alleged basis for liability is the execution of a contract. That is plainly not the issuance of a "permit, license, certificate, approval, order, or similar authorization." *See* Cal. Gov. Code § 821. No authority suggests otherwise. Section 821.2 does not apply.

*b. Legislative privilege does not provide immunity.*

The Trustee Defendants next argue that their decision was immune under legislative privilege. *See* District Amended Motion at 30. Legislative privilege provides immunity for certain "publication[s] or broadcast[s]," including those made in legislative proceedings. *See* Cal. Civ. Code § 47 ("Section 47"). Defendants argue that voting constitutes speech, citing precedent from the First Circuit. *See* District Amended Motion at 30, citing *Stella v. Kelley*, 63 F.3d 71, 75 (1st Cir. 1995). But *Stella* merely held that "votes cast by public officials" is "speech protected by the First Amendment." *See Stella*, 63 F.3d at 75. Even if this precedent were binding, it would not necessarily follow that votes cast by public officials are "publication[s] or broadcast[s]" within the meaning of Section 47. As the District Defendants concede, legislative privilege typically applies in defamation or libel actions, where the substance of what was said in a publication or broadcast is at issue. *See* District Amended Motion at 30.

Here, Plaintiff do not seek to hold the District Defendants liable for the substance of their speech. Rather, Plaintiffs seek to hold the District Defendants liable for a *decision* which allegedly constituted a breach of fiduciary duty. FAC ¶¶ 150–52. This decision necessarily required a vote, as the District Defendants point out. *See* District Reply at 9–10. But nevertheless, this decision appears significantly different from the sort of "publication or broadcast" that Section 47 protects. *See* Cal. Civ. Code § 47. The District have provided no authority extending Section 47 to a decision that constituted a breach of fiduciary duty. The Court holds that Section 47 does not apply here.

***

Accordingly, the District Defendants' Motion to Dismiss the fifth cause of action is DENIED as to this ground.

**B. Plaintiffs have standing to bring their taxpayer suits (fourth and fifth causes of action)**

California law allows taxpayers to bring suits to prevent illegal expenditures by public entities. *See Torres v. City of Yorba Linda*, 13 Cal. App. 4th 1035, 1046–47 (1993), *as modified on denial of reh'g* (Mar. 25, 1993); *see also* Cal. Code Civ. Pro. § 526a (defining taxpayer suit requirements). But a purported taxpayer plaintiff must have standing to bring such a suit, which requires two showings. First, the plaintiff must "establish he or she is a taxpayer." *Torres*, 13 Cal. App. 4th at 1047. Second, the "governmental conduct must be illegal" or "constitute waste." *Thompson v. City of Petaluma*, 231 Cal. App. 4th 101, 105 (2014). California courts "liberally construed the standing requirements for taxpayers." *Torres*, 13 Cal. App. 4th at 1047.

Here, Plaintiffs allege that Griffin pays property taxes in Los Angeles County (FAC ¶ 7). This is sufficient for the first prong. The District Defendants argue that Griffin is not a *resident* of Los Angeles County, and have requested notice of documents purported proving this fact. *See* District Amended Motion at 23–24; District RJN1; District RJN2. But "a nonresident who pays property taxes" has standing to sue under Section 526a. *Thompson*, 231 Cal. App. 4th at 105. The allegation that Griffin pays property taxes must be taken as true at this stage, and is sufficient. *See id.* The District Defendants' arguments about the complex funding structure of LACCD are also unavailing at this stage. *See* District Amended Motion at 23–24. The Court will not consider facts outside the complaint. *See Corinthian Colleges*, 655 F.3d at 998. Taking the allegations as true, Griffin has pleaded facts sufficient for a plausible inference that he pays taxes that fund LACCD, and therefore has plausibly alleged that he meets the first requirement for standing.

Next, Plaintiffs have plausibly alleged waste. Waste is a useless expenditure of public funds that is incapable of achieving the ostensible goal. *See Chiatello v. City & Cnty. of San Francisco,* 189 Cal. App. 4th 472, 482 (2010), *as modified on denial of reh'g* (Nov. 16, 2010). Plaintiffs allege that the Professional Defendants are engaged in a scheme to delay public works projects and drive

up their own fees, that a neutral arbitrator found that the Professional Defendants breached their duty of good faith in their work on the Project, and that despite knowing or having reason to know these facts, LACCD extended the Professional Defendants' contracts. *See* FAC ¶¶ 24, 54, 140. These allegations are sufficient for a plausible inference LACCD engaged in waste by extending the contracts. *See Chiatello*, 189 Cal. App. 4th at 482.

The District Defendants argue that standing requires an allegation of "fraud, collusion, ultra vires, or a failure on the part of the governmental body to perform a duty specifically enjoined." *See* District Amended Motion at 24. In support of this position, the District Defendants cite *Silver v. City of Los Angeles*, 57 Cal.2d 39, 41–42 (1961). The Court need not reach the question of whether the alleged conduct might fit in to the categories described above, as more recent California court decisions make clear that allegations of waste are also sufficient. *See Chiatello*, 189 Cal. App. 4th at 482; *Thompson*, 231 Cal. App. 4th at 105. These decisions are supported by the plain text of Section 526a, which allows taxpayer suits "restraining and preventing any illegal expenditure of, *waste of*, or injury to" a public entity's funds. *See* Cal. Code Civ. Pro. § 526a(a) (emphasis added). *Silver* did not specifically consider Section 526a. *See Silver*, 57 Cal.2d at 40–42.

Accordingly, Plaintiffs have standing for their taxpayer causes of action, and the District Defendants' Motion to Dismiss the fourth and fifth causes of action is DENIED as to this ground.

### C. The Statute of Limitations does not bar Plaintiffs' taxpayer claims (fourth and fifth causes of action)

Certain taxpayer suits are subject to a 60-day statute of limitations. Although Section 526a does not itself contain a statute of limitations, courts view some suits brought under Section 526a as limited by the statute of limitations for validation actions. *See McLeod v. Vista Unified Sch. Dist.*, 158 Cal. App. 4th 1156, 1165 (2008). A validation action is a suit brought pursuant to California Code of Civil Procedure § 860 or California Code of Civil Procedure § 870. *See id*; Cal. Civ. Proc. Code § 860 ("Section 860"); Cal. Civ. Proc. Code § 870 ("Section 870"). Sections 860 and 870 allow either a public agency or any other interested person to bring an action to determine the validity of certain public agency actions. *See McLeod*, 158 Cal. App. 4th at 1165–66. These actions have a 60-day statute of limitations. *See id.* at 1166. If no such suit is brought within 60 days, then

"the agency's action will become immune from attack whether it is legally valid or not." *Id.* (citing *California Com. Casino, Inc. v. Schwarzenegger*, 146 Cal. App. 4th 1406, 1420 (2007), *as modified on denial of reh'g* (Feb. 22, 2007). This immunity from attack bars taxpayer suits. *See McLeod*, 158 Cal. App. 4th at 1170.

This 60-day statute of limitation does not apply in all cases, because not all agency actions may be challenged via validation suits, and actions not challengeable do not become immune from attack. *See Kaatz v. City of Seaside*, 143 Cal. App. 4th 13, 48 (2006). Accordingly, the key question in determining whether the statute of limitation applies to the taxpayer claims brought here is whether the actions these claims challenge could have been the subject of a validation suit. Sections 860 and 870 do not define what may be challenged, and simply state that they apply to "any matter which under any other law is authorized to be determined pursuant to this chapter." Cal. Civ. Proc. Code § 860.

Injunctive relief and restitution are not generally available as remedies in validation statutes. *Davis v. Fresno Unified Sch. Dist.*, 57 Cal. App. 5th 911, 929 (2020), *as modified on denial of reh'g* (Dec. 16, 2020), *aff'd*, 14 Cal. 5th 671 (2023). However, it does not necessarily follow that a taxpayer suit seeking an injunction or restitution is immune from the statute of limitations. The question hinges on "[t]he gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded." *McLeod*, 158 Cal. App. 4th at 1165 (quoting *Embarcadero Mun. Improvement Dist. v. Cnty. of Santa Barbara*, 88 Cal. App. 4th 781, 789 (2001). Where a suit for an injunction challenges a government decision that could have been challenged via a validation suit, the suit is subject to the 60-day statute of limitations. *McLeod*, 158 Cal. App. 4th at 1171. Again, the key issue is whether the underlying agency action being challenged could have been the subject of a validation suit.

A school district's issuance of bonds is challengeable by a validation suit. *See McLeod*, 158 Cal. App. 4th at 1168–69 (citing Cal. Educ. Code § 15110). Thus, taxpayer actions challenging the issuance of such bonds, even where the actions seek injunctions, are subject to a 60-day statute of limitations. *See id.* The *McLeod* court held that where bond money could only be used to purchase property and build certain school facilities, a taxpayer suit to challenge the construction of those

school facilities was a challenge to the bonds themselves, and thus subject to the statute of limitations. *See McLeod*, 158 Cal. App. 4th at 1169 (both parties agreed that relevant money could only be spent to construct specific schools). The District Defendants cite *McLeod* to argue that the claims here are barred, because the relevant contracts were financed via bonds. District Amended Motion at 22. But here, although the contracts appear to be financed by bonds, there is no indication that these contracts are the *only* thing bond money could be spent on. In theory, the Court could issue an injunction invalidating the contracts with the Professional Defendants, and the LACCD could spend the bond money on other items. Hence, a suit challenging these contracts does not challenge the underlying bond issuance. *McLeod* therefore does not control. *See McLeod*, 158 Cal. App. 4th at 1169. The court is aware of no other authority that would authorize Plaintiffs to bring a validating suit here. Because the District Defendants have not shown that a validating suit could have been brought to challenge the contracts with the Professional Defendants, the taxpayer claims challenging those contracts are not subject to the 60-day statute of limitations. That statute of limitations does not bar Plaintiffs' claims.

Accordingly, the District Defendants' Motion to Dismiss the fourth and fifth causes of action is DENIED as to this ground.

***

**Accordingly, the District Defendants' Motion to Dismiss is DENIED with respect to the fourth and fifth causes of action and GRANTED with respect to the sixth cause of action.**

***

### D. The District Defendants' Anti-SLAPP Motion to Strike is Denied.

The District Defendants brought a motion to strike based on California's Anti-SLAPP law. *See* Cal. Code Civ. Pro. § 425.16, et seq. As discussed in more detail above, the Anti-SLAPP law requires two showings, the second of which is a probability of success on a standard equivalent to the 12(b)(6) standard. *Planned Parenthood*, 890 F.3d at 834. Accordingly, a defendant cannot win an Anti-SLAPP motion as to claims that survived a 12(b)(6) motion and are properly pleaded, even assuming these claims pass the first step of the Anti-SLAPP analysis, as such claims would fail at

the second step. Therefore, in evaluating the District Defendants' Anti-SLAPP motion, the Court will only consider claims where the 12(b)(6) motion was granted.

Accordingly, the Court need only consider this motion as to the sixth cause of action, a UCL claim against LACCD. The District Defendants' Anti-SLAPP Motion to Strike is DENIED as to the fourth and fifth causes of action.

The sixth cause of action seeks an order against LACCD based on the UCL, but it does not focus on LACCD's conduct, and instead is "based on [the Professional Defendants'] unfair competition." FAC ¶ 159. However, the Anti-SLAPP law applies to "a cause of action against a person arising from any act *of that person*" in furtherance of free speech rights.[16] Cal. Civ. Proc. Code § 425.16(b)(1) (emphasis added). The statute does not appear to apply where a lawsuit is brought against one party based on the acts of another party, regardless of whether the second party's acts were in furtherance of free speech rights. The Court is aware of no authority allowing LACCD to bring an Anti-SLAPP Motion based on the argument that the suit against LACCD arises from conduct by the Professional Defendants in furtherance of the Professional Defendants' free speech rights. Here, where the Professional Defendants also brought an Anti-SLAPP motion addressing their own conduct, there is no reason to deviate from the statute's text and allow LACCD to assert the rights of other parties. Hence, the Court will not consider for this motion whether the Professional Defendants' conduct was in furtherance of their free speech rights.

To the extent that the sixth cause of action is based on LACCD's own conduct in extending the contract, it also fails. If construed as focused on LACCD's conduct, the sixth cause of action would not seek to hold LACCD liable for LACCD's statements or writings—that is, LACCD's speech—and rather would call in to question LACCD's non-speech conduct in extending a contract. The Court is not convinced that the extension of a contract by a public entity is conduct to which the Anti-SLAPP law applies. The District Defendants have not shown that this conduct was "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free

[16] For the avoidance of confusion, "person" includes government entities like LACCD. *See Vargas v. City of Salinas*, 46 Cal. 4th 1, 17 (2009) (Section 425.16 "extends to statements and writings of governmental entities [] on matters of public interest.").

speech." *See Jordan-Benel*, 859 F.3d at 1188. Accordingly, the Anti-SLAPP motion as to the sixth cause of action against LACCD fails at the first step.

Therefore, the District Defendants' Anti-SLAPP Motion to Strike is DENIED as to the sixth cause of action.

***

**Accordingly, the District Defendants' Anti-SLAPP Motion to Strike is DENIED as to the fourth, fifth, and sixth causes of action.**

**E. Request for attorneys' fees is denied.**

The District Defendants seek attorneys' fees as part of their Motion. *See* District Motion at 32. This request is tied to the success of the Anti-SLAPP Motion. *See id.* Because that Motion was denied, the request for fees is also DENIED.

/ / /

/ / /

/ / /

**PROFESSIONAL DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE (ECF NO. 30)**

The standard for a request for judicial notice is discussed in more detail above. To briefly reiterate, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee*, 250 F.3d at 690. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 998.

Here, the Professional Defendants request judicial notice of 33 documents ("Professional RJN Exhibits"). *See* Professional RJN. Plaintiffs do not oppose this request and do not contest the authenticity of any document, and so the Court will accept the Professional Defendants' representations on what each document constitutes. However, this alone is not sufficient for the request to be granted. At this stage, the Court will only take judicial notice of documents that are appropriate to consider on a motion to dismiss. *See Lee*, 250 F.3d at 689. Most of the Professional RJN Exhibits do not meet this standard, because they were not referenced in the complaint and not central to it. *See Corinthian Colleges*, 655 F.3d at 998.

A small number of the Professional RJN Exhibits are appropriate for notice. The FAC references the arbitration award between Pinner and LACCD (FAC ¶ 54), a contract between Pinner and LACCD (*id.* ¶¶ 18, 20), the settlement agreement between Pinner and LACCD regarding TIAs 1–5 (*id.* ¶ 45), contracts between the various Professional Defendants and LACCD (*id.* ¶ 21), and duties under those contracts (*see, e.g.*, *id.* ¶ 81). The Court finds that, considering the FAC as a whole, each of these documents are central to the allegations. Accordingly, the following Professional RJN Exhibits will be noticed and considered in analyzing the Professional Defendants' Motion to Dismiss: Exhibit 1 (the Pinner – LACCD arbitration award); Exhibits 2–4 (which collectively amount to the Pinner – LACCD contract); Exhibit 5 (The Pinner – LACCD settlement

agreement regarding TIAs 1–5); and Exhibits 7–10[17] (contracts between LACCD and various Professional Defendants). *See* Professional RJN at 1–2.

The remainder of the Professional RJN Exhibits are not referenced directly in the complaint and therefore not appropriate for notice. This includes various contracts (including subcontractor contracts) between the Professional Defendants, meeting minutes and other governance documents from LACCD, documents related to Griffin's properties, and other documents regarding LACCD or its colleges. These documents are not referenced in the FAC, and to the extent it comes close to referencing them, they are certainly not central to it. They are therefore not appropriate for judicial notice. *See Corinthian Colleges*, 655 F.3d at 998.

**Accordingly, the Professional Defendants' Request for Judicial Notice is GRANTED IN PART—as to Exhibits 1-5 and 7-10.**

***

## PROFESSIONAL DEFENDANTS' MOTION TO DISMISS (Rule 12(b)(6)) AND MOTION TO STIKE (RULE 12(f) (ECF NO. 28)

### I. Applicable Law

#### A. Rule 12(b)(6)

The standards for a motion to dismiss based on Rule 12(b)(6) are widely known and are discussed in detail above. The Court need not reiterate them here, except to stress that the Court must take all plausible allegations as true and draw all inferences in favor of Plaintiffs. *See Park*, 851 F.3d at 918 (9th Cir. 2017). Accordingly, a holding that a claim may not be dismissed at this stage is not a determination that the claim is meritorious, nor is it a determination as to whether any fact alleged by Plaintiffs or the Professional Defendants is true.

---

[17] Exhibit 6 is similar to Exhibit 7–10, but is a contract between LACCD and Jacobs Project Management Co. ("JPMG"), which is not a defendant. Contracts with this entity are not referenced in the complaint, and so the Court sees no basis to consider such contracts. The Professional Defendants argue that JPMG should have been named as a defendant instead of Jacobs (*see* Professional Motion to Dismiss at 3), and Plaintiffs conceded that this is correct at the hearing. But because the Professional Defendants did not agree to allow Plaintiffs to amend their complaint and correct this issue, the operative version of the complaint does not reference any contract with JPMG. The Court sees no basis for considering an extrinsic document not referenced in the complaint at this stage.

**B. Rule 12(f)**

In addition to Rule 12(b)(6), the Professional Defendants also brought a motion to strike pursuant to Federal Rule of Civil Procedure Rule 12(f) ("Rule 12(f)"). Rule 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted).

**II. <u>Discussion</u>[18]**

**A. The conspiracy alleged in support of the Plaintiffs' various claims is not implausible.**

The Professional Defendants' first argument is that the conspiracy alleged in support of the Plaintiffs' various claims is not plausible. *See* Professional Motion to Dismiss at 8–10. As the Professional Defendants describe it, *all* of Plaintiffs' state law claims turn on an allegation that the "Professional Defendants agreed to engage in a multi-year conspiracy to make false representations to LACCD for the purpose of delaying the Project to enrich themselves and harm Plaintiffs, while also gambling away their well-earned reputation and risking [civil liability]."[19] *See id.* at 9. Examining the factual allegations and drawing inferences in favor of the Plaintiff, the Court finds that the conspiracy is not implausible under the low standard that applies here.

Plaintiffs allege multiple facts that support a motive for the conspiracy. First, Plaintiffs allege that the Professional Defendants, due to their fee structures, would make more money if the project dragged on longer. *See* FAC ¶ 22. The Professional Defendants fail to rebut this fundamental point. The Professional Defendants argue that because of "their respective fee structures," no Professional

---

[18] The Court notes that the Professional Defendants are only seeking to dismiss the *California state law* causes of action, namely, the first, third, fourth, sixth, and seventh, *not* the second cause of action under the *federal* RICO statute. *See* Professional Motion to Dismiss at 25 (stating in the "Conclusion" that "Professional Defendants' respectfully requests that the Court dismiss FAC causes of action 1, 3-4, and 6-7 with prejudice").

[19] While not clearly stated in the Motion, at the hearing, counsel clarified the contours of this argument.

Defendant would "benefit by rejecting Pinner's requests." Professional Motion to Dismiss at 9. But in support of this, the Professional Defendants cite only two examples, neither of which would be appropriate to credit over Plaintiffs' allegations at this stage. The first relates to JPMG, which was not named as a defendant, but that the Professional Defendants contend and Plaintiffs concede should have been. *See id.* at 3, 9. As discussed above, the Court cannot take judicial notice of the contract with JPMG (Professional RJN Exhibit 6) because it is not referenced in the complaint. *See supra* n.16. Second, the Professional Defendants argue that Arcadis' fees would not significantly increase due to delay. Professional Motion to Dismiss at 9. Again, the Professional Defendants cite an exhibit which is not properly subject to judicial notice, because the complaint does not reference it (Professional RJN Exhibit 12, the subcontractor contract between Arcadis and DACM). Even if the Court were to take notice of this exhibit, the Professional Defendants concede that Arcadis' fees *would* increase if the Project were delayed, but only by an amount that the Professional Defendants characterize as not significant. *See* Professional Motion to Dismiss at 10. This does not show the conspiracy is implausible. Plaintiffs alleged that the Professional Defendants had a motive for the conspiracy, and no noticed exhibit or other argument appears to rebut this.

Further, Plaintiffs add one additional motive. The Professional Defendants were responsible for preconstruction review of plans, and "promised LACCD's board that the Project could be built on time and within budget." FAC ¶ 21. To the extent that Pinner discovered issues in preconstruction plans, these issues threatened to expose past errors by the Professional Defendants and drive the cost up above what the Professional Defendants promised. *See id.* The Professional Defendants therefore had a plausible motive to blame these issues on Pinner and reject Pinner's attempts to seek changes to the plans or extra money to cover the cost of unexpected work. The Professional Defendants may disagree with these allegations—and may be able to disprove them at a later stage of this litigation—but the Court must accept them as true at this stage.

Plaintiffs also allege a consistent pattern of behavior by the Professional Defendants. According to the Plaintiffs, at every turn, the Professional Defendants pushed back against Plaintiffs, and urged LACCD to deny Plaintiffs' requests and refuse to settle with Plaintiffs. *See generally*

FAC. This does not prove a conspiracy, but it is consistent with one, and makes the conspiracy plausible.

Finally, Plaintiffs allege specifically when the conspiracy was formed. *See* FAC ¶ 24. The Professional Defendants argue that this is implausible and not properly pleaded, as some the Professional RJN Exhibits purportedly show that at least some of the Professional Defendants were not yet working on the Project at that time. *See* Professional Motion to Dismiss at 12. In support of this, the Professional Defendants point to the same two exhibits discussed above, which the Court cannot take notice of. *See id.* Beyond the issues with noticing these documents, the Court is not convinced that these documents would make the alleged formation implausible. Even if the Court accepted that JPMG is the right entity, assumed that the subcontractor contract between Arcadis and DACM is when Arcadis joined the project, and took notice of these contracts and the fact that they are dated after March 9, 2017, a plausible inference from the facts alleged would be that JPMG and Arcadis joined the plot on March 9, 2017, because they expected to sign on to the Project. Alternatively, another plausible inference is that the conspiracy was formed on March 9, 2017 without JPMG and Arcadis, and JPMG and Arcadis subsequently joined the conspiracy upon joining the project. Taking Plaintiffs' factual allegations as true, this conspiracy is plausible. Nevertheless, at the hearing, the Plaintiffs conceded that they should have alleged a later date for these parties joining the conspiracy. They also indicated that they had offered to amend the Complaint to address this deficiency. In light of this concession, the Court will DISMISS this claim WITHOUT PREJUDICE and grant LEAVE TO AMEND the Complaint to address this issue.[20]

Accordingly, the Motion to Dismiss all state law claims alleging this conspiracy (namely, the third, fourth, sixth, and seventh causes of action) is GRANTED WITH LEAVE TO AMEND.[21]

/ / /

---

[20] The parties are further reminded of this Court's Standing Order, *see infra*, note 13, and the Professional Defendants will be admonished for any future failures to agree to reasonable amendments that would cure identified deficiencies.

[21] Note that the first cause of action would be dismissed with leave to amend on this ground as well, but as discussed below, it is being DISMISSED WITHOUT LEAVE TO AMEND on another ground.

**B. The alleged fraudulent statements are not pleaded with sufficient particularly as to some defendants.**

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires that when pleading fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P 9(b). When alleging fraud by multiple defendants, a plaintiff may not "merely lump multiple defendants together" and must "differentiate their allegations" and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).

Here, Plaintiffs alleged that a series of reports and other statements were "false and fraudulent," but for each, have made an identical allegation that Strauss and Tyrell drafted and sent the reports, and DACM, Arcadis, and Jacobs ratified them. *See* FAC ¶¶ 32, 35, 37, 43, 50, 52, 54, 60, 65, 100. These allegations are sufficient as to Strauss and Tyrrell, as Plaintiffs allege specifically that Strauss and Tyrrell wrote the reports. Each paragraph also adds at least some detail about what was false in the reports and when the reports were drafted. *See, e.g.* FAC ¶ 32 (stating that report was sent "[o]n or about July 26, 2017" and including detail on specific alleged falsehoods in the report).

But as to the other defendants, this is not a sufficient allegation, and is rather an attempt to "merely lump multiple defendants together." *See Swartz*, 476 F.3d at 764–65. There is no specific detail on what circumstances constituted ratification of the fraudulent reports by DACM, Arcadis, or Jacobs, or when or how this alleged ratification took place. *See id.* Plaintiffs fail to state a claim that DACM, Arcadis, or Jacobs ratified the reports mentioned in FAC ¶¶ 32, 35, 37, 43, 50, 52, 54, 60, 65, 100.[22]

---

[22] Because Plaintiffs have alleged a conspiracy and brought a RICO claim, it may still be possible for Plaintiffs to show that DACM, Arcadis, or Jacobs are liable for the allegedly fraudulent reports. *See* FAC ¶¶ 24, 85–118. Further, Strauss is alleged to be a DACM employee, which might also provide a basis for DACM to be liable for Strauss' conduct. *Id.* ¶ 9. The Court's holding is simply that the allegations that DACM, Arcadis, and Jacobs ratified the reports are not adequately pleaded under Rule 9(b).

Accordingly, the Motion to Dismiss all state law claims alleging fraud (namely, the third, fourth, sixth, and seventh causes of action) is GRANTED WITH LEAVE TO AMEND.[23]

**C. Impact of mandatory dispute resolution on Plaintiffs' claims.**

1. <u>The Settlement Agreement does not bar claims based on TIAs 1–5.</u>

The Professional Defendants argue that the Settlement Agreement between Pinner and LACCD bars claims by Plaintiffs against the Professional Defendants that arise from actions related to TIAs 1–5. *See* Professional Motion to Dismiss at 12–13. Plaintiffs disagree. *See* Opp'n to Professional Motion to Dismiss at 9–10. The Courts finds that whether the Settlement Agreement bars the claims is a question of fact.

As discussed above, the Settlement Agreement was properly subject to judicial notice, and so the Court may consider it. Paragraph 5.2 of the Settlement Agreement makes clear that "P[inner], for itself and its respective heirs, legal successors, assigns, agents, representatives, attorneys, officers, employees, and associates" discharges all possible claims against LACCD and "any of all of its respective agents, servants, employees, attorneys, representatives, [etc.]" "which concern or relate to" the claims at issue in the settlement. *See* Settlement Agreement at 2.[24]

Drawing all inferences in favor of Plaintiffs, the FAC does not make clear that the Professional Defendants are or were "agents, servants, [or] representatives" as defined in the Settlement Agreement, or part of any other group that the Settlement Agreement applies to. These terms are not defined, and are susceptible to different interpretations. The Professional Defendants argued at the hearing that finding that the Settlement Agreement does not apply to the Professional Defendants is inconsistent with a finding that the Plaintiffs have taxpayer standing to sue the Professional Defendants, because Section 526a only authorizes suits against private parties that are "agent[s]" of a local entity or "acting in [a local entity's] behalf." *See* Cal. Code Civ. Pro. § 526a(a). However, drawing all inferences in favor the Plaintiffs, it is far from clear that the words used in the

---

[23] Note that the first cause of action would be dismissed with leave to amend on this ground as well, but as discussed below, it is being DISMISSED WITHOUT LEAVE TO AMEND on another ground.

[24] The Settlement Agreement can be found at page 244 of the Professional RJN (ECF No. 30), and is marked as Exhibit 5 to that document.

Settlement Agreement have the same meaning as those used in Section 526a. Even if they did, Plaintiffs may plead in the alternative, and Court may allow alternative and contradictory theories to survive at this stage. There may be daylight between the definitions, such that a Professional Defendant could qualify for liability under Section 526a but not be a member of any group listed in the Settlement Agreement.

Whether or not this paragraph of the Settlement Agreement applies to the Professional Defendants and bars claims against them is a question of fact. Accordingly, the Court cannot dismiss claims on the basis of the Settlement Agreement at this stage and the Professional Defendants' Motion to Dismiss all state law claims (namely, the first, third, fourth, sixth, and seventh causes of action) is DENIED on this ground.

2. The Arbitration Award does not bar any claims.

The Professional Defendants argue next that the Arbitration Award bars certain claims. *See* Professional Motion to Dismiss at 14–15. The Professional Defendants cite authority that "[o]nce a case is in arbitration, litigation of a second case arising out of the same transactional nucleus of facts cannot be permitted." *Bucur v. Ahmad*, 244 Cal. App. 4th 175, 186 (2016). However, *Bucur* does not appear to contemplate a situation where a party to an arbitration seeks to bring an additional suit against a non-party to the arbitration. The Professional Defendants cite no authority suggesting *Bucur*'s holding extends to such a fact pattern.

The Arbitration Award makes clear that is it a resolution of "all claims between the parties." *See* Arbitration Award at 59.[25] The Arbitration award does not contain language extending its resolution of claims anyone beyond LACCD itself. Accordingly, there is no reason to hold at this stage that Plaintiffs' claims against the Professional Defendants are barred by the arbitration award, and the Professional Defendants' Motion to Dismiss all state law claims (namely, the first, third, fourth, sixth, and seventh causes of action) is DENIED on this ground.

/ / /

---

[25] The Arbitration Award can be found at page 11 of the Professional RJN (ECF No. 30), and is marked as Exhibit 1 to that document.

3. <u>The statements at issue were not privileged based on connection to an arbitration proceeding.</u>

Statements made by litigants in connection to litigation are privileged under California law. *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990). This privilege covers arbitration in addition to typical litigation. *See Moore v. Conliffe*, 7 Cal. 4th 634, 643 (1994).

Here, Plaintiffs claims do not rely on statements the Professional Defendants made *in* arbitration proceedings. *See, e.g.*, FAC ¶ 32 (Professional Defendants "mailed and emailed a series of false and fraudulent written reports" in July 2017); ¶ 35 (Professional Defendants "mailed and emailed a false and fraudulent 'Change Order Justification Form'" on September 19, 2018); ¶ 53 (Defendants' "willful and malicious misrepresentation, concealment and interference" in "September, October, and November 2020" caused LACD to make no offer of settlement and forced Pinner to complete arbitration). The arbitration occurred in 2021. *Id.* ¶ 54. It is unclear from the complaint whether the Professional Defendants testified in the course of the arbitration, but regardless, the complaint makes clear that it seeks to hold the Professional Defendants liable for statements that occurred outside of the arbitration. No authority suggests that these statements are covered by the litigation privilege. Even to the extent that the Professional Defendants advised LACCD or others on strategy for the arbitration (*see, e.g.*, ¶ 53), no authority suggests the litigation privilege would apply. "Nonparticipants and nonlitigants to judicial proceedings are never protected from liability." *Wise v. Thrifty Payless, Inc.*, 83 Cal. App. 4th 1296, 1304 (2000). The litigation privilege does not apply to the statements at issue here, and the Professional Defendants' Motion to Dismiss all state law claims (namely, the first, third, fourth, sixth, and seventh causes of action) is DENIED on this ground.

**D. Claims related to TIAs 8–10 are not ripe.**

Plaintiffs allege that the Professional Defendants have submitted reports to LACCD suggesting that LACCD should deny Pinner's requests related to TIAs 8–10. FAC ¶¶ 60–65. However, as Plaintiffs concede, these denials have not yet occurred. FAC ¶¶ 61, 65. Claims stemming from the reports regarding TIAs 8–10 are not ripe at this time. If LACCD opts to ignore the Professional Defendants' reports and grant the requests, no harm will flow from those reports. At

this time, any assertion of injury is mere conjecture. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs' arguments otherwise are unconvincing. *See* Opp'n to Professional Motion to Dismiss at 12. The lack of ripeness is present regardless of whether there is contract between Plaintiffs and the Professional Defendants; the issue is a lack of harm rather than anything related to a contract. Moreover, the fact that Plaintiffs bring a UCL claim to prevent future interference does not change the Court's conclusion. Plaintiffs point to no authority suggesting UCL claims can be brought for actions that have occurred but have not yet led to injury. *See* Opp'n to Professional Motion to Dismiss at 12.

At the hearing, Plaintiffs explained that as of June 1, 2023, LACCD still had not taken any action on TIAs 8–10. Plaintiffs suggested that LACCD is deliberately delaying. But Plaintiffs provided no authority that this delay makes this dispute ripe for adjudication. As of the time of this Order, it is still unclear whether LACCD will deny these requests, and accordingly claims seeking to hold the Professional Defendants liable for causing LACCD to deny the requests are not ripe. *See* FAC ¶¶ 62, 63, 65, 66 ("it is anticipated" that the Professional Defendants' "intentional misrepresentations, concealments and interference" related to TIAs 8–10 will cause various harms).

The allegations regarding TIAs 8–10 are not ripe for adjudication unless and until LACCD actually denies the claims.

Accordingly, the Professional Defendants' Motion to Dismiss all state law claims relying on TIAs 8-10 (namely, the third, fourth, sixth, and seventh causes of action) is GRANTED on this ground WITH LEAVE TO AMEND should LACCD deny TIAs 8-10.[26]

/ / /

/ / /

/ / /

[26] Note that the first cause of action would be dismissed with leave to amend on this ground as well, but as discussed below, it is being DISMISSED WITHOUT LEAVE TO AMEND on another ground.

**E. Plaintiffs have standing for their taxpayer suit regarding the extension of the contracts (fourth cause of action), and Plaintiffs have properly stated taxpayer claims.**

The Professional Defendants raise several of the same arguments raised by the District Defendants and already addressed above. The Court will not address these issues again in detail. For the reasons discussed above, Plaintiffs' allegations that Griffin pays taxes in Los Angeles County are sufficient, and arguments that he does not live in Los Angeles County or that LACCD's funding does not flow from Griffin's taxes fail at this stage. Further, as the Professional Defendants concede, "waste" is a valid basis for a taxpayer suit. *See* Professional Motion to Dismiss at 19. Although the Professional Defendants cite authority suggesting that waste must be "more than an alleged mistake," they also point to a case that held that a city's decision to install sewer lines outside the city limits could constitute waste, depending on the city's motives. *See City of Ceres v. City of Modesto*, 274 Cal. App. 2d 545, 555–56 (Ct. App. 1969). This is consistent with the discussion of waste above. Here, based on the facts alleged, it is plausible that the extension of the Professional Defendants contracts could constitute waste. The fourth cause of action seeking to invalidate the extension of the contracts that came after the arbitration award may proceed. The Professional Defendants' Motion to Dismiss the fourth cause of action is DENIED on this ground.

**F. The taxpayer suit for breach of fiduciary duty (first cause of action) is not properly pleaded.**

Plaintiffs' first cause of action is a taxpayer suit seeking to hold the Professional Defendants liable for alleged breaches of fiduciary duty. *See* FAC ¶¶ 77–84. This cause of action relates to the Professional Defendants' alleged conduct *leading up to* the arbitration award. *Id.* ¶ 80. Plaintiffs are frustrated that after the arbitration award, LACCD did not seek to recover the money paid to Professional Defendants before that award, and Plaintiffs now seek to recover that money on behalf of the taxpayers. *See id.* This raises significantly different issues than the taxpayer suits to invalidate the later extension of the contracts.

A government entity's decision "whether to pursue a legal claim involves the sort of discretion that falls outside the parameters of waste under section 526a." *Daily J. Corp. v. Cnty. of Los Angeles*, 172 Cal. App. 4th 1550, 1558 (2009). Hence, the Court cannot hold that the decision

not to seek to recover money from the Professional Defendants for previous work constituted waste under Section 526a. *See id.* Accordingly, because suits under Section 526a must either target waste or an illegal government decision, this suit can only be maintained if LACCD's conduct "was illegal." *Thompson*, 231 Cal. App. 4th at 105. Absent allegations showing fraud or collusion by the government agency, a government agency has discretion on whether to pursue a claim for reimbursement, and no mandatory duty to pursue it. *See Daily J. Corp.*, 172 Cal. App. 4th at 1559 ("In the absence of allegations showing fraud or collusion, this was purely a matter of the County's discretion and is therefore not subject to a claim for waste or an action in mandate." (citing *Elliott v. Superior Ct. In & For Solano Cnty.*, 180 Cal. App. 2d 894, 897 (Ct. App. 1960))).

Plaintiffs have alleged fraud by the *Professional Defendants*, which might appear to bring this case within the exception for "fraud or collusion" described above. *Id.*; *see, e.g.*, FAC ¶¶ 32, 37, 43 ("false and fraudulent written reports"). But a close examination reveals this is not so. Plaintiffs allege that the *Professional Defendants* engaged in fraud, but their taxpayer suit at issue here relates not to that alleged fraud, but rather to LACCD's decision to not pursue claims against the Professional Defendants about their alleged fraud. Plaintiffs *do not* allege LACCD or any Trustee Defendant engaged in fraud in making that decision. The latter is the sort of fraud that would be required for a taxpayer suit to be proper. *See Elliott*, 180 Cal. App. 2d at 897 (taxpayer cannot bring taxpayer suit based on government agency's failure to pursue a claim where "there are no facts stated, nor is it contended, that either *agency* was guilty of fraud or bad faith in refusing" to pursue the claim (emphasis added)). Section 526a suits can only be brought in limited circumstances to invalidate government decisions that were illegal or wasteful, and are not usually the proper remedy against fraud by private parties like the Professional Defendants. California courts have made clear that such suits cannot be brought for discretionary government acts, and whether the government chooses to pursue a claim is such discretionary act. *See Daily J. Corp.*, 172 Cal. App. 4th at 1559. To allow private citizens to question that discretion "could lead to chaos." *Elliott*, 180 Cal.App.2d at 897. Even where the government chooses not to pursue relief for serious alleged wrongdoing, like bribery, the government's decision not to pursue relief cannot be questioned via a taxpayer suit. *See Silver v. Watson*, 26 Cal. App. 3d 905, 909–10.

Accordingly, the first cause of action fails to state a claim and must be dismissed. This dismissal will be without leave to amend as there is no indication that amendment would not be futile. *See Manzarek*, 519 F.3d at 1031. Therefore, the Professional Defendants' Motion to Dismiss the first cause of action is GRANTED WITHOUT LEAVE TO AMEND.

**G. The interference with contract claim (third cause of action) is properly pleaded.**

1. <u>Managers' privilege does not bar this claim.</u>

Under California law, managers' privilege allows a "manager or agent" to advise his principal to breach a contract without being subject to liability. *Huynh v. Vu*, 111 Cal. App. 4th 1183, 1194 (2003). A manager or agent need not be purely motivated by his principal's interests for the privilege to apply. *See Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982). However, the manager must at least in part be motivated by a desire to aid his principal. *Huynh*, 111 Cal. App. 4th at 1198. Courts apply different tests in different circumstances, but all require at least some degree of desire to benefit the principal. *See id.* If a manager or agent encourages a breach of contract entirely out of self-interest, the managers' privilege does not apply. *See id.*

Here, drawing all inferences in favor of the Plaintiffs, it is plausible that the Professional Defendants were entirely self-motivated in encouraging LACCD to breach its contracts with Pinner. The Professional Defendants argue that they were at least partially motivated by a desire to keep costs low, which would help LACCD. *See* Professional Motion to Dismiss at 21. But this is far from clear, particularly given the allegation that the breach cost the taxpayers money in the long run due to delays and other issues caused by the breach. *See* FAC ¶ 134. Managers' privilege does not bar this claim.

2. <u>The economic loss rule does not bar this claim.</u>

The economic loss rule "prevents the erosion of contract doctrines by use of tort law to work around them." *Sheen v. Wells Fargo Bank, N.A.*, 505 P.3d 625, 633 (Cal. 2022). It typically bars tort claims for actions that should be brought as breach of contract, but does not apply where a plaintiff "can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). The rule "prevents the law of contract and the law of tort from dissolving into one another." *Id.*

A tort claim for interference with contract is distinct from a breach of contract claim, and is properly brought as a tort action.[27] The claim is based on conduct independent of the breach of contract, namely, the *inducement* of that breach. The economic loss rule does not bar this claim.

The Professional Defendants raise no other arguments against the third cause of action, and the Court sees no other fatal flaws in it, so it will not be dismissed.

***

Accordingly, the Professional Defendants' Motion to Dismiss the third cause of action is DENIED as to these grounds.

**H. The UCL claim (sixth cause of action) is not properly pleaded against the Professional Defendants, because it seeks a remedy against LACCD.**

Plaintiffs' UCL claim seeks an injunction "requiring LACCD to suspend and/ or set aside" contract extensions granted to the Professional Defendants. FAC ¶ 159. But Plaintiffs concede they cannot seek this remedy against LACCD, and seek it only against the Professional Defendants. *See* Opp'n to District Motion at 15-16. Plaintiffs cite no authority suggesting that they may sue the Professional Defendants and seek an injunction that would only bind LACCD, and the Court is aware of none. *See* Fed. R. Civ. P. 65(d)(2) (injunction binds "the parties;" parties' "officers, agents," etc.; and "other persons who are in active concert or participation" with the parties). Plaintiffs suggest they may re-style this claim as one against the Professional Defendants. *See* Opp'n to Professional Motion to Dismiss at 20. Plaintiffs may be able to state a claim by doing so, as Section 526a allows certain claims against those "acting on behalf of" a public entity. *See* Cal. Code Civ. Pro. § 526a(a). But at present, this claim fails as a matter of law.

The sixth cause of action must be dismissed. Dismissal will be with leave to amend. *See* *Manzarek*, 519 F.3d at 1031. Accordingly, the Professional Defendants' Motion to Dismiss the sixth cause of action is GRANTED WITH LEAVE TO AMEND.

---

[27] Two other federal district courts in California have considered this question and held that the economic loss rule does not apply to claims for interference with contractual relations. *See Glob. Plastic Sheeting v. Raven Indus.*, No. 17-CV-1670 DMS (KSC), 2018 WL 6920673, at *6 (S.D. Cal. May 31, 2018); *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304 SC, 2014 WL 2621465, at *7 (N.D. Cal. June 12, 2014).

**I. The implied contractual indemnity claim (seventh cause of action) is properly pleaded.**

Implied contractual indemnity is a doctrine which "is designed to apportion loss among contract parties based on the concept that one who enters a contract agrees to perform the work carefully and to discharge foreseeable damages resulting from that breach." *Sehulster Tunnels/Pre-Con v. Traylor Bros./Obayashi Corp.*, 111 Cal. App. 4th 1328, 1351 (2003). When one party breaches and causes harm to the other, the breaching party is responsible for covering the losses.

The Professional Defendants argue that the implied indemnity claims necessarily fails because there was no privity between them and Plaintiffs. *See* Professional Motion to Dismiss at 23–24. In support, the Professional Defendants cite a case which held that "historically," implied contractual indemnity was available to "two parties in a contractual relationship." *See Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1159 (2009). But this holding does not suggest that at present, the doctrine is only available where there is privity.

Plaintiffs argue that being a third-party beneficiary to a contract is sufficient. *See* Opp'n to Professional Motion to Dismiss at 20. Plaintiffs cite no binding authority on this issue, except to note that in 1967, a federal court held that "there appears to be no California cases applying the doctrine of implied indemnity in favor of third party beneficiaries, it is the view of this Court that the California courts will have no difficulty in so doing in a proper case." *Great Am. Ins. Co. v. Evans*, 269 F. Supp. 151 (N.D. Cal. 1967).

The Court holds that implied contractual indemnity applies to third-party beneficiaries. When parties enter contracts that have third-party beneficiaries, the contracting parties agree to perform the work carefully for the benefit of those third parties, just as they do for the parties to the contract. *See Sehulster* 111 Cal. App. 4th at 1351. There is no reason that implied contractual indemnity should not also protect third parties. The Supreme Court of California's *Prince* holding does not foreclose this. If a party breaches the contract, and a third-party beneficiary is harmed, that party may seek to recover via implied contractual indemnity.

Plaintiffs have sufficiently pleaded that they were third-party beneficiaries to whom the Professional Defendants owed duties. *See, e.g.* FAC ¶ 35 (describing process through which Pinner

notified the Professional Defendants of necessary redesigns, which required the Professional Defendants to acknowledge Pinner was correct). This claim may proceed.

Accordingly, the Professional Defendants' Motion to Dismiss the seventh cause of action is DENIED as to this ground.

***

**Accordingly, the Professional Defendants' Motion to Dismiss is GRANTED with respect to the first, third, fourth, sixth, and seventh causes of action. It is GRANTED WITHOUT LEAVE TO AMEND the first cause of action. It is GRANTED WITH LEAVE TO AMEND the third, fourth, sixth, and seventh causes of action.**

***

### J. The Court Grants the Motion to Strike the allegations related to the Harbor Project.

The FAC at times references the Harbor Project, a previous construction project that Pinner worked on with LACCD and some of the Professional Defendants. *See, e.g.* FAC ¶ 119 ("PINNER entered into a valid design-build contract with LACCD construction of a new Science Complex located at the Los Angeles Harbor College.") The Professional Defendants seek to strike such allegations as "unrelated to" the Project at issue here. *See* Professional Motion to Dismiss at 25.

Plaintiffs did not address this issue in their Opposition to the Professional Defendants' Motion to Dismiss, and agreed at the hearing to strike these allegations. Accordingly, the Motion to Strike the allegations related to the Harbor Project is GRANTED. FAC paragraphs that relate entirely to the Harbor Project are STICKEN. FAC ¶¶ 23, 119. Where FAC paragraphs partially relate to the Harbor Project, only those parts are stricken. FAC ¶¶ 120 ("The contracts for HARBOR and the Project are hereinafter collectively referred to as "CONTRACTS"), 122 ("both the HARBOR and"), 129 ("(A) Inducing PINNER to execute the "no cost" time extension change orders for HARBOR"), 133 ("$5mil on HARBOR"), 163 ("$5mil on HARBOR").

**Accordingly, the Professional Defendants' Motion to Strike the Harbor Project allegations is GRANTED.**

/ / /

**PROFESSIONAL DEFENDANTS' SPECIAL MOTION TO STRIKE (ECF NO. 29)**

The Professional Defendants moved to strike pursuant to California's Anti-SLAPP law, and sought attorneys' fees in doing so. *See* Professional Motion to Strike.

As discussed above, the Court need only address claims that were dismissed pursuant to Rule 12(b)(6), as the motion will necessarily fail as to those that were not. Furthermore, the Court holds that where leave to amend is granted, and where amending may lead to a probability of success, the Anti-SLAPP motion should be denied as moot. Several federal District Courts in California have held that leave to amend leads to the denial an Anti-SLAPP motion, reasoning that holding otherwise would undermine the federal policy that favors leave to amend. *See Grasshopper House, LLC v. Clean & Sober Media, LLC*, No. 218CV00923SVWRAO, 2018 WL 6131161 at *6 (C.D. Cal. Apr. 24, 2018); *Ogden v. Wells Fargo Bank, N.A.*, No. CV 15-3410-DMG (ASX), 2019 WL 1751818, at *6 (C.D. Cal. Feb. 6, 2019); *Sun v. Siemens AG*, No. CV1000174SJOSHX, 2010 WL 11549644, at *2 (C.D. Cal. Oct. 27, 2010). These decisions are not binding, but this Court agrees with their reasoning. California law on leave to amend aligns with this rule. Leave to amend should not be granted in order to allow to void defendant's showing that the lawsuit was in furtherance of the defendant's rights of petition or free speech (the first step of Anti-SLAPP). *See Nguyen-Lam v. Cao*, 171 Cal. App. 4th 858, 870 (2009) (citing *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001). However, leave to amend is appropriate where amendment might allow plaintiff to "demonstrate[] a probability of prevailing at trial" (the second step of Anti-SLAPP). *Id.* at 873. The *Nguyen* court held that granting leave to amend is "effectively" a denial of the Anti-SLAPP motion. *Id.* at 874. Where leave to amend is granted, and amendment might lead to a probability of success, the Anti-SLAPP motion should be denied.

In light of the above, only one claim against the District Defendants needs to be analyzed for this motion: the first cause of action, a taxpayer suit seeking to hold the Professional Defendants

liable for alleged breaches of fiduciary duty, which was dismissed without leave to amend.[28] *See* FAC ¶¶ 77–84. These alleged breaches were, at least to a large extent, in statements and written reports made to LACCD and its representatives. *See id.*

At the first step of the Anti-SLAPP analysis, the Professional Defendants must show the challenged conduct was "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Jordan-Benel*, 859 F.3d at 1188. As the Professional Defendants note, the statements and reports in question were given to LACCD, which is a legislative body, and which was considering a large public works project, an issue of public interest. *See* Professional Motion to Strike at 11–17. These statements, which are connected to "an issue under consideration or review by a legislative [or similar] body," are in furtherance of free speech right, and pass the first step of the Anti-SLAPP analysis. *DuPont Merck Pharm. Co. v. Superior Ct.*, 78 Cal. App. 4th 562, 567 (2000), *as modified* (Jan. 25, 2000) (alteration in original). Plaintiffs do not appear to contest that these statements are in furtherance of a free speech right, and instead focus on arguing that an exception applies. *See* Opp'n to Professional Motion to Strike at 4–8.

Plaintiffs point to two exceptions: commercial speech and public interest. *See id.* The commercial speech exception prohibits a defendant from winning an Anti-SLAPP motion where:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2) [an actual or potential buyer or customer, etc.]

---

[28] As to the claims relying on conspiracy and on fraud, and as to the sixth cause of action—a UCL claim seeking an injunction against LACCD, brought against both LACCD and the Professional Defendants—the Court holds that amending could lead to a probability of success against the Professional Defendants, for the reasons discussed in those sections.

*Rivera v. First DataBank, Inc.*, 187 Cal. App. 4th 709, 717–18 (2010); Cal. Code Civ. Pro. §.425.17(c)(2). Plaintiffs bear the burden of showing this exception applies, and should present evidence to meet this burden.[29] *Id.* at 717.

Plaintiffs have not met their burden of showing that the commercial speech exception applies. Plaintiffs have not shown that the statements were representations about the Professional Defendants' businesses or about a competitor, and thus fail at the second element. The Professional Defendants focus their argument on the notion that Pinner and the Professional Defendants are competitors. *See* Opp'n to Professional Motion to Strike at 5. But this is unconvincing. The FAC suggests that Pinner and the Professional Defendants do different work within the construction industry, and no evidence was presented proving otherwise. *See* FAC ¶¶ 20–21 (describing Pinner's leading role in construction of the project and describing the Professional Defendants as "third party construction managers" with a significantly different role). Although Plaintiffs cite non-binding authority suggesting businesses may compete even if they have different offerings, nothing in the FAC or otherwise presented by the Plaintiffs suggests that the Professional Defendants currently compete or could compete against Pinner. *See* Opp'n to Professional Motion to Strike at 5, citing *Heitkoetter v. Domm,* No. 22-cv-368-AWI-BAM, 2022 WL 16748731, at *7 (E.D. Cal. Nov. 7, 2022). Plaintiffs have not met their burden of showing this exception applies.

Nor have Plaintiffs shown that the public interest exception applies. The public interest exception exempts a lawsuit from Anti-SLAPP motions if the "action [is] brought solely in the public interest or on behalf of the general public" to "enforce an important right affecting the public interest," and "plaintiff does not seek any relief greater than or different from the relief sought for the general public." *Klem v. Access Ins. Co.*, 17 Cal. App. 5th 595, 611 (2017). However, the *entire action*, not just individual claims, must meet this test; the exception does not

---

[29] Plaintiffs are permitted and at times required to present evidence to defeat an Anti-SLAPP motion. "Unlike [motions to dismiss] or motions to strike, which are designed to eliminate sham or facially meritless allegations, at the pleading stage a SLAPP motion, like a summary judgment motion, pierces the pleadings and requires an evidentiary showing." *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001).

apply to "an action that seeks a more narrow advantage for a particular plaintiff." *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 317 (2008). Here, although Plaintiffs bring some taxpayer causes of action that might qualify for this exception if brought alone, Plaintiffs third and seventh causes of actions are state law claims that seek damages to compensate Plaintiffs for their injuries. *See* FAC ¶¶ 135, 165. Plaintiffs seek relief greater than or different than the relief sought for the general public. Therefore the public interest exception does not apply to this action. *See Klem* 17 Cal. App. 5th at 611.

Accordingly, Defendants have shown that their challenged conduct stemmed from protected activity, and Plaintiffs have failed to show an exception applies. And Plaintiffs have not shown a likelihood of success on the first cause of action. The Professional Defendants' Motion to Strike is GRANTED as to the first cause of action. The Court will hold further proceedings to determine an appropriate fee award.

**CONCLUSION**

For the reasons discussed herein, the Court hereby orders as follows:

1. The District Defendants' First Request for Judicial Notice is GRANTED IN PART:
   a. The Request is GRANTED with respect to Exhibits A-C; and
   b. The Request is DENIED with respect to Exhibits D-J;
2. The District Defendants' Second Request for Judicial Notice is DENIED;
3. The District Defendants' Motion to Dismiss is GRANTED IN PART:
   a. The Motion is GRANTED WITHOUT LEAVE TO AMEND with respect to the sixth cause of action as to LACCD;
   b. The Motion is DENIED with respect to the fourth and fifth causes of action;
4. The District Defendants' Anti-SLAPP Motion to Strike is DENIED;
5. The Professional Defendants' Request for Judicial Notice is GRANTED IN PART:
   a. The Request is GRANTED with respect to Exhibits 1-5 and Exhibits 7-10; and
   b. The Request is DENIED with respect to Exhibit 6 and Exhibits 11-33;

/ / /

/ / /

6. The Professional Defendants' Motion to Dismiss is GRANTED:
    a. The Motion to Dismiss is GRANTED WITHOUT LEAVE TO AMEND with respect to the first cause of action; and
    b. The Motion to Dismiss GRANTED WITH LEAVE TO AMEND with respect to the third, fourth, sixth, and seventh causes of action;
7. The Professional Defendants' Motion to Strike the Harbor Project allegations is GRANTED;
8. The Professional Defendants' Special Motion to Strike is GRANTED as to the first cause of action only;
9. The Plaintiffs and the Professional Defendants are to meet and confer in order to seek agreement on the attorneys' fees to be awarded to the Professional Defendants with respect to the first cause of action, and file a joint stipulation within thirty (30) days of the date of this Order; and
10. If the Plaintiffs and the Professional Defendants are unable to reach agreement on the attorneys' fees to be awarded to the Professional Defendants with respect to the first cause of action, the Parties are to file a joint stipulation with a proposed briefing schedule on the request for attorneys' fees within thirty (30) days of the date of this Order.

IT IS SO ORDERED.

Dated: July 3, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge