1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| DIRK T. GRIFFIN, on behalf of himself and the tax payers of the State of California; PINNER CONSTRUCTION CO., INC., a California corporation; MECHANICAL TECHNOLOGY SYSTEMS, INC., a California corporation; MCGUIRE CONTRACTING, INC., a Nevada corporation,<br><br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br><br>MARK W. STRAUSS, an individual; DACM PROJECT MANAGEMENT, INC., a Florida corporation; ARCADIS U.S., INC., a Delaware corporation; JACOBS ENGINEERING GROUP INC., a Delaware corporation; KEVIN TYRELL, an individual; GIG PUKPRAYURA, an individual; QDG INCORPORATED, a California corporation; and, LOS ANGELES COMMUNITY COLLEGE DISTRICT, an agency organized and existing pursuant to the laws of the State of California; GABRIEL BUELNA, an individual; DAVID VELA, an individual; NICHELLE HENDERSON, an individual; STEVEN F. VERES, an individual; KELSEY K. IINO, an individual; ANDRA HOFFMAN, an individual; ERNEST H. MORENO, an individual and DOES 1-50, inclusive,<br><br><div align="center">Defendants.</div> | Case No.: 2:22-cv-06183-MEMF (PLAx)<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES [ECF NO. 63]** |

Before the Court is a Motion for Attorneys' Fees filed by Defendants Mark W. Strauss; DACM Project Management, Inc. ("DACM"); Arcadis U.S., Inc. ("Arcadis"); Jacobs Engineering Group Inc. ("JEG"); Kevin Tyrrell; Gig Pukprayura; and QDG Incorporated ("QDG") (collectively "Professional Defendants"). For the reasons stated herein, the Court GRANTS the Motion IN PART.

## BACKGROUND

### I.    Factual Background

The Court described the extensive factual background of this litigation in its previous Order regarding various Motions to Dismiss and Motions to Strike. ECF No. 63. The Court will briefly summarize that background here.

Plaintiffs Dirk T. Griffin ("Griffin"), Pinner Construction Co., Inc. ("Pinner"), Mechanical Technology Systems, Inc. ("MechTS"), and McGuire Contracting, Inc. ("McGuire," or collectively, "Plaintiffs") were hired by Los Angeles Community College District ("LACCD") for the construction of a group of buildings on the Los Angeles Valley College campus. *See id.* at 2–3. The Professional Defendants are third party construction managers, program managers, and architects who were hired by LACCD to assist with this construction. *See id.* at 3.

Plaintiffs allege that the Professional Defendants orchestrated a plot to delay construction, run up fees, and blame Plaintiffs for the delays. *See id.* at 4–10. Plaintiffs allege that the Professional Defendants made various false reports and other statements as part of this plot. *See id.*

### II.    Procedural History

Plaintiffs filed their Complaint in Los Angeles County Superior Court on August 2, 2022, against the Professional Defendants, LACCD, and the "Trustee Defendants" (another group not relevant to this Order). ECF No. 1-1; *see also* ECF No. 51. Defendants removed to this Court on August 30, 2022. ECF No. 1.

Plaintiffs filed a First Amended Complaint on September 6, 2022. ECF No. 12 ("FAC"). Plaintiffs FAC alleged seven causes of action, six of which were brought against the Professional Defendants: (1) a taxpayer action pursuant to California Code of Civil Procedure § 526a ("Section 526a") and common law for breach of fiduciary duty against the Professional Defendants, seeking a money judgment on behalf of the taxpayers of the state of California (FAC ¶¶ 77–84); (2) a claim for

1    violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c),

2    "RICO") against the Professional Defendants, seeking compensatory and treble damages (FAC ¶¶

3    85–117); (3) a claim for intentional interference with contract against the Professional Defendants,

4    seeking compensatory and punitive damages (FAC ¶¶ 118–135); (4) a taxpayer action pursuant to

5    Section 526a and common law seeking a permanent injunction ordering LACCD to set aside

6    contracts with the Professional Defendants, brought against the LACCD and the Professional

7    Defendants (FAC ¶¶ 136–144); (5) a taxpayer action pursuant to Section 526a and common law for

8    breach of fiduciary duty against the Trustee Defendants (FAC ¶¶ 145–153); (6) a claim pursuant to

9    the California Unfair Competition Law (Cal. Bus. Prof. Code. § 17203, "UCL") against LACCD and

10   the Professional Defendants, seeking an injunction requiring LACCD to suspend or set aside any

11   extension of the Professional Defendants' contracts (FAC ¶¶ 154–159); and (7) a claim for implied

12   contractual indemnity against the Professional Defendants (FAC ¶¶ 160–165).

13       On July 3, 2023, the Court issued an Order on several Requests for Judicial Notice, Motions

14   to Dismiss, and Motions to Strike. ECF No. 51. As part of that Order, the Court granted in part a

15   request for judicial notice, a Motion to Dismiss, a Motion to Strike, and a Special Anti-SLAPP

16   Motion to Strike, all brought by the Professional Defendants. *See id.* at 49–50. The Court dismissed

17   the first cause of action against the Professional Defendants without leave to amend; dismissed the

18   third, fourth, sixth, and seventh causes of action against the Professional Defendants with leave to

19   amend, struck certain allegations, and granted the Professional Defendants' Anti-SLAPP Motion as

20   to the first cause of action only. *See id.*

21       The Professional Defendants filed the instant Motion for Attorneys' Fees—seeking fees for

22   the Anti-SLAPP Motion—on September 15, 2023. ECF No. 63 ("Motion," or "Mot."). Alongside

23   their Motion, the Professional Defendants filed a Memorandum of Points and Authorities (ECF No.

24   63-1, "MPA"), several attorney declarations (ECF Nos. 63-2–63-5), and a Request for Judicial

25   Notice (ECF No. 63-6, "RJN"). Plaintiffs filed an Opposition to the Motion on October 11, 2023.

26   ECF No. 65 ("Opposition" or "Opp'n"). Plaintiffs filed an attorney declaration (ECF No. 65-1),

27

28

evidentiary objections[1] (ECF No. 65-2), and an Opposition to the Request for Judicial Notice (ECF No. 65-3, "RJN Opp'n"). The Professional Defendants filed a Reply in Support of the Motion on October 20, 2023. ECF No. 66 ("Reply"). The Professional Defendants also filed an additional attorney declaration (ECF No. 66-1) and a Reply in support of the Request for Judicial Notice (ECF No. 66-2, "RJN Reply"). Finally, the Professional Defendants also filed Objections to Plaintiffs' Opposition.[2] ECF No. 67.

The Court held a hearing on the Motion on December 21, 2023.

## REQUEST FOR JUDICIAL NOTICE (ECF No. 63-6)

### I.    Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

### II.    Discussion

The Professional Defendants request judicial notice of: (1) an excerpt of "United States Consumer Law Attorney Fee Survey Report 2017-2018," a survey and report that is available on the internet; and (2) a 2023 article entitled "Where Are Partner Billing Rates Surging the Most in Big Law?" which is also available on the internet. *See* RJN. The Professional Defendants request that the Court take notice of both the existence of these items and "the statements in [them]." *See id.* at 3. Defendants oppose this, arguing that the statements on these websites are hearsay. *See* RJN Opp'n.

The Court finds that the existence of these items is properly subject to judicial notice, as the existence of these items on the internet "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). However, the Court

---

[1] In preparing this Order, the Court considered Plaintiffs' evidentiary objections. ECF No. 65-2. The Court did not find any objected-to evidence essential to its Order, and so need not reach these objections.

[2] In preparing this Order, the Court considered the Professional Defendants' Objections. ECF No. 67. The Court did not find any objected-to evidence essential to its Order, and so need not reach these objections.

1    will not take judicial notice of the statements on contained in these items. The truth of these

2    statements is not generally known with the Court's jurisdiction, nor can it be readily determined

3    from sources whose authority cannot be questioned. *See id.*

4         The Court notes that it does not necessarily need to rely on sources of this nature to

5    determine a reasonable fee award. A district court "should be guided by the rate prevailing in the

6    community." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *amended on*

7    *other grounds*, 808 F.2d 1373 (9th Cir.1987). A district court may rely on attorney declarations or

8    may rely "in part, on its own knowledge and experience" in determining the proper rate. *Ingram v.*

9    *Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

10    **III.    Conclusion**

11         The Court GRANTS IN PART the Request for Judicial Notice. The Court will take notice of

12    the existence of the items in question but will not take notice of their contents.

13    <div align="center">**MOTION FOR ATTORNEYS' FEES**</div>

14    **I.    Applicable Law**

15         Under California Code of Civil Procedure section 425.16(c), "any SLAPP defendant who

16    brings a successful motion to strike is entitled to mandatory attorney fees." *See Ketchum v. Moses*,

17    17 P.3d 735, 741 (Cal. 2001). "[T]he fee provision applies only to the motion to strike, and not to the

18    entire action." *S. B. Beach Props. v. Berti*, 138 P.3d 713, 717 (Cal. 2006). The moving party "bears

19    the burden of establishing entitlement to an award and documenting the appropriate hours expended

20    and hourly rates." *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (Ct. App. 2008)

21    (internal alterations omitted). "To that end, the court may require a defendant to produce records

22    sufficient to provide a proper basis for determining how much time was spent on particular claims."

23    *Id.* (internal quotations and alterations omitted). "The court also may properly reduce compensation

24    on account of any failure to maintain appropriate time records." *Id.*

25         The calculation of attorneys' fees is guided by the "lodestar" method. *See Ketchum*, 17 P.3d

26    at 743. The "lodestar" is the "the number of hours reasonably expended multiplied by the reasonable

27    hourly rate," and "may then be adjusted, based on consideration of factors specific to the case, in

28    order to fix the fee at the fair market value for the legal services provided." *Id.*

1

**II.    <u>Discussion</u>**

2

The Professional Defendants seek a total award of $270,500. *See* Mot. at 1. This is based on

3

a request of $185,500 for the initial Anti-SLAPP Motion and $85,000 for efforts to collect fees,

4

including meet and confers and the filing of this Motion. *See id.* Plaintiffs argue that such an award

5

is not supported by the evidence the Professional Defendants provided.

6

As a party that prevailed on an Anti-SLAPP Motion, the Professional Defendants are plainly

7

entitled to some degree of a fee award. However, as further described below, the Court finds that the

8

requested fee award is not appropriate, as it appears to include time not spent on the Anti-SLAPP

9

Motion and does not account for the limited success of the Anti-SLAPP Motion. For these reasons,

10

the Court will grant the Professional Defendants a reduced fee award from what they seek. As

11

described below, the Court finds it appropriate to grant the Professional Defendants $117,549.41. To

12

arrive at this number, the Court calculated reasonable time spent on relevant items and reduced it for

13

the limited success of the Anti-SLAPP Motion.

14

**A.    Initial considerations and concession as to fee reduction.**

15

As an initial matter, the Court notes that nowhere in the Professional Defendants' Motion do

16

the Professional Defendants explain how they arrived at the numbers described above. A Motion for

17

Attorney Fees should include a simple summary as to how counsel arrived at the requested fee

18

amount (e.g., "We request a total of $50,000, based on 100 hours worked and $500 per hour," or

19

some more complex but still clear statement of calculation). The Professional Defendants failed to

20

do so. Although the Professional Defendants submitted various declarations summarizing the work

21

of various attorneys, there is no overall summary, and no clear statement of the final calculation. *See*

22

ECF Nos. 63-2–63-5. As Plaintiffs note, there is no lodestar analysis showing how much money is

23

sought for each attorneys' work, the total hours in the declaration do not add up to the total amount

24

sought, and the Motion suggests that the Professional Defendants are seeking less than the actual

25

amount billed without specifying which hours they are seeking an award for. *See* Opp'n at 11. This

26

27

28

1  lack of clarity frustrates the Court's analysis.[3] Because the Professional Defendants failed to comply

2  with this Court's Standing Order and because they opted to not support their fee request with

3  detailed time entries, the Court has drawn its own reasonable inferences from the information

4  provided. *Cf. Christian Rsch. Inst.*, 165 Cal. App. 4th at 1329 ("[C]ounsel may not submit a plethora

5  of noncompensable, vague, blockbilled attorney time entries and expect particularized, individual

6  deletions as the only consequence. The trial court could reasonably conclude counsel made no effort

7  to prune the fee request to comply with the law. Counsel erred grievously by attempting to transfer

8  that responsibility onto the trial court.").

9      The hours submitted do not add up to the total that the Professional Defendants requested.

10  The Professional Defendants requested of $185,500 for the initial Anti-SLAPP Motion and $85,000

11  for efforts to collect fees. But, as shown in the table below, even if the Court were to award fees at

12  the rates the Professional Defendants request and for all hours submitted, it would not amount to this

13  amount.

| Attorney | Rate | Time Spent on Anti-SLAPP Motion | | Time Spent on Fee Collection | |
|---|---|---|---|---|---|
| | | Requested Hours | Hours x Rate | Requested Hours | Hours x Rate |
| Nicholas Krebs | $295 | 105.2 | $31,034.00 | 111.5 | $32,892.50 |
| Carolyn Woodson | $950 | 75.65 | $71,867.50 | 20 | $19,000.00 |
| Daniel McMillan | $1,100 | 14.8 | $16,280.00 | 0 | - |
| Whitney Thompson | $500 | 15.55 | $7,775.00 | 20 | $10,000.00 |
| Nicholas Rawls | $475 | 58.65 | $27,858.75 | 0 | - |
| Geoffrey Melkonian | $500 | 29.8 | $14,900.00 | 5.6 | $2,800.00 |
| Liam Malone | $425 | 62.5 | $26,562.50 | 41.6 | $17,680.00 |
| Stephen Litchfield | $425 | 21.55 | $9,158.75 | 0 | - |
| Samuel Muir | $500 | 10.7 | $5,350 | 0 | - |

---

[3] The way in which the Professional Defendants organized this Motion also violates Section VIII(F) of the Court's Standing Order, which requires that "Any motion or request for attorneys' fees shall attach two summaries, in table form, of the hours worked by and billing rate of each attorney with title (e.g., partner, counsel, associate, etc.)."

| | | | | | |
|---|---|---|---|---|---|
| **Total** | | | **$210,786.50** | | **$82,372.50** |

It appears to the Court that the Professional Defendants have conceded, on their own accord, that the award that would result from hours spent on the Anti-SLAPP Motion multiplied by the hourly rate should be reduced by 12% (to get from $210,786.50 to $185,500). The Court will accept this concession. As discussed below, the Court will reduce the hours in some instances, and will apply other reductions to the fee award. The award that would result from these calculations will be further reduced by 12% pursuant to the Professional Defendants' apparent concession.

**B. The Professional Defendants' proposed hourly rates are reasonable.**

The Professional Defendants' request that their fee award be based on various rates for different attorneys, between $295 (*see* ECF No. 63-2 ¶ 34) and $1,100 per hour (*see* ECF No. 63-3 ¶ 9). Based on the Court's knowledge of the expertise regarding attorney billing rates, the experience of counsel, and the complexity of the issues in this action, the Court finds that these rates are reasonable.

Plaintiffs dispute the reasonableness of these rates. First, Plaintiffs argue certain rates, especially those charged by attorneys at Jones Day, are too high. *See* Opp'n at 9. The Court disagrees and finds that these rates are largely in line with those charged by peer firms. While the Court acknowledges that some of the rates would be considered shockingly high in some circles, they are not out of line with what the market generally pays for legal services from large law firms with established brand names. The Court makes no finding on whether such fees are appropriate, and rather finds that the rates are not unusual and therefore not out of line with reasonable market rates. Second, Plaintiffs take issue with the fact that the rates requested by Litchfield Law are higher than what Litchfield Law actually charged its clients. But in calculating attorneys' fees, the Court's task is not to rubber-stamp the fees an attorney actually charges, but rather to determine the "fair market value" of the attorneys' services. *See Ketchum*, 17 P.3d at 741. This might cut in either direction, either reducing or increasing a fee from the price charged to a client. Here, Litchfield Law charged its client $235 per hour and requests between $425 and $550 per hour. *See* ECF No. 63-5 ¶ 8. The Court finds that the requested rates are reasonable.

The Court will calculate the fee award based on the amounts below:

| Attorney | Firm | Rate |
|----------|------|------|
| Nicholas Krebs | Gordon Rees Scully Mansukhani, LLP | $295 per hour (*see* ECF No. 63-2 ¶ 34) |
| Carolyn Woodson | Jones Day | $950 per hour (*see* ECF No. 63-3 ¶ 9) |
| Daniel McMillan | Jones Day | $1,100 per hour (*see* ECF No. 63-3 ¶ 9) |
| Whitney Thompson | Jones Day | $500 per hour (*see* ECF No. 63-3 ¶ 9) |
| Nicholas Rawls | Jones Day | $475 per hour (*see* ECF No. 63-3 ¶ 9) |
| Geoffrey Melkonian | Law Offices of Geoffrey G. Melkonian | $500 per hour (*see* ECF No. 63-4 ¶ 6) |
| Liam Malone | Litchfield Law PC | $425 per hour (*see* ECF No. 63-5 ¶ 8) |
| Stephen Litchfield | Litchfield Law PC | $425 per hour (*see* ECF No. 63-5 ¶ 8) |
| Samuel Muir | Litchfield Law PC | $500 per hour (*see* ECF No. 63-5 ¶ 8) |

**C. The Professional Defendants' summary time descriptions show some inefficiencies in counsel's work.**

Plaintiffs argue that the descriptions of time spent by the Professional Defendants' counsel show duplicative and/or wasteful work. *See* Opp'n at 16–17. The Court notes that to the extent that Plaintiffs are asserting that the Professional Defendants padded their summary time descriptions with time not actually worked, they have provided no basis for this, except to point out that the overall hours totals are high. Nevertheless, the Court has a responsibility to "carefully review attorney documentation of hours expended," and to ensure that "'padding' in the form of inefficient or duplicative efforts" is not rewarded with compensation. *See Ketchum*, 17 P.3d at 735. With this in mind, and having reviewed the evidence submitted, the Court finds that certain summary time descriptions are sufficiently above what the Court would consider reasonable for the relevant tasks that the Court feels compelled to reduce the total number of hours. The Court will go through such instances in detail in the Section G below.

**D. The Professional Defendants failed to distinguish time spent on the Anti-SLAPP Motion from other case work.**

The law is clear that an Anti-SLAPP award should not include time spent on the Anti-SLAPP Motion, "not to the entire action." *See S. B. Beach*, 138 P.3d at 717. Here, the Professional Defendants have in some cases not properly distinguished their time spent on the Anti-SLAPP Motion from other time. The Court notes that, as described in the Court's previous Order, the Anti-SLAPP Motion was dependent on the success of the 12(b)(6) Motion, and the two Motions were

analyzed together and dealt with the same facts. *See* ECF No. 51 at 46 ("the Court need only address claims that were dismissed pursuant to Rule 12(b)(6), as the [Anti-SLAPP] Motion will necessarily fail as to those that were not"). For this reason, the Court finds it appropriate to include certain time spent on the 12(b)(6) Motion in the fee award, as this was necessary for the Anti-SLAPP Motion's success. But the Court still must limit the fee award to activities related to the Anti-SLAPP Motion and will reduce the hours in certain instances where attorneys appear to be billing for the case as a whole rather than activities related to the Anti-SLAPP Motion. *See Christian Rsch. Inst.*, 165 Cal. App. 4th at 1325 (finding it appropriate for the trial court to reduce the fee award where "[t]he record suggests [defendant] sought to transfer to the opposing parties the cost of every minute counsel expended on the case, whether or not anti-SLAPP work was involved.") These instances will be described in more detail in Section G below.

   **E. The Professional Defendants failed to account for the limited success of their Anti-SLAPP Motion.**

   "The fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way." *Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 345 (Ct. App. 2006). Here, the Professional Defendants appear to request compensation for all time spent on the Anti-SLAPP Motion. This is plainly contrary to California law. The Court will reduce the fee in an amount commensurate with the partial success of the Anti-SLAPP Motion.

   As the Professional Defendants note, the Anti-SLAPP Motion was granted as to one claim that sought $20 million in damages. *See* Reply at 10. But it was brought as to six claims, and the suit as a whole sought $75 million. *See* Mot. at 4. The Professional Defendants also note that Plaintiffs have not sought to amend their complaint as to the claims the Court dismissed with leave to amend, and so the Anti-SLAPP Motion may have had a larger impact on the case than is obvious. Nevertheless, it is plain that the Anti-SLAPP Motion was only partially successful.

   In the hearing, both sides presented arguments as to the amount that the award should be reduced. The Professional Defendants argued that the Anti-SLAPP Motion has had a large impact on the case, emphasizing again that Plaintiffs have not filed an amended complaint, and arguing that at

1    present, certain of the Professional Defendants have no claims brought against them. The

2    Professional Defendants argue that this shows that the Anti-SLAPP Motion (and its success,

3    especially the Court's finding that the underlying activity is subject to Anti-SLAPP protection) is

4    deterring Plaintiffs from bringing more claims. Plaintiffs disagreed, arguing that they have not yet

5    brought their planned amended complaint because they have been busy with negotiations as to the

6    fee award and other case work. Plaintiffs suggested that the reduction should be at least 80%, if not

7    more, because the Anti-SLAPP Motion only succeeded as to one of five claims, and because the

8    same overall amount is still at stake with the remaining claims.

9         The Court finds it appropriate to reduce the award by 2/3 to account for the partial success of

10   the Motion. In other words, the Court will calculate the total fee that would be awarded based on

11   time spent on the Anti-SLAPP Motion, and then reduce that amount by 2/3, then award 1/3 of the

12   total. This reduction shall not apply to efforts to collect fees, as the partial success does not apply to

13   these efforts.

14        **F. The Professional Defendants are entitled to time spent on pursuing fees, but only to
             "reasonable" time.**

15

16        Plaintiffs argue that the Professional Defendants should not be entitled to collect fees for

17   their efforts to collect fees. The Court disagrees.

18        Both the Ninth Circuit and California recognize that fee awards generally may include time

19   reasonably spent on a fee petition. *See Davis v. City & Cnty. of San Francisco,* 976 F.2d 1536 (9th

20   Cir. 1992), *vacated in part on other grounds by* 984 F.2d 345 (9th Cir. 1993) ("This Court has

21   repeatedly held that time spent by counsel in establishing the right to a fee award is compensable.");

22   *Serrano v. Unruh*, 652 P.2d 985, 997 (Cal. 1982) (fee awards "ordinarily include compensation for

23   all hours reasonably spent, including those necessary to establish and defend the fee claim.").

24   However, a party might not win fees for time spent preparing a fee petition if there are

25   "circumstances rendering the award [for time spent preparing a fee petition] unjust." *Ketchum*, 17

26   P.3d at 742. Here, the Court sees no exceptional circumstances that would point against the general

27   rule, and so will allow the Professional Defendants to collect fees for time spent meeting and

28

conferring in an attempt to resolve the fee issue without motion practice and for the preparation of this Motion.

The Court also notes that Plaintiffs take issue with the amount of time purportedly spent on meeting and conferring. *See* Opp'n at 26. The Professional Defendants are only entitled to fees for hours "reasonably" spent on fee collection. *See Serrano*, 652 P.2d at 997. The Professional Defendants' counsel purportedly spent 106.9 hours on such meet and confers (including preparation and letters), while Plaintiffs' counsel spent 13.9 hours. Within the context of this case—which involved several, differently situated parties represented by several different attorneys—the Court does not find it surprising that the Professional Defendants' counsel spent more time on fee collection that Plaintiffs' counsel spent on related activities. It is reasonable that the Professional Defendants' counsel spent more on the meet and confer process than the Plaintiffs given there were so many attorneys and given that the bulk of the work—compiling evidence in support of the fee awards to show Plaintiffs—necessarily fell on them. However, some summary time descriptions still appear unusually large. The Court will reduce the hours slightly to reasonable numbers as described in Section G below.

In the hearing, Plaintiffs argued that the Court's proposed award for fee collection efforts is inappropriately large. Plaintiffs note that they repeatedly offered $50,000 as a compromise, and that the Court's tentative ruling suggested that the award for the Anti-SLAPP Motion would be $54,290.75 (as it turns out, the Court's final fee award for the Anti-SLAPP Motion is even lower). Thus, Plaintiffs argue that time spent on negotiating the fee award should not be compensated, reasoning the Court's final fee award showed that the Professional Defendants should have accepted the compromise offer. The Court is not convinced by this line of argument. Plaintiffs appear to be analogizing to Federal Rule of Civil Procedure 68, which in some circumstances will penalize a party for declining to accept a compromise offer and then later winning a judgment for less than the compromise amount. *See* Fed. R. Civ. P. 68(d). The Court is aware of no authority extending this Rule (or any similar rule) to the circumstances here. Further, the Plaintiffs argument oversimplifies the analysis. The Professional Defendants' compromise offer was $50,000 *in total* accounting for both the initial Anti-SLAPP Motion and time spent negotiating the fee award. Even if the

1   Professional Defendants had spent less time negotiating (by accepting a compromise), they still

2   would have been entitled for *some* compensation for the time spent negotiating the fee award, which

3   would not have been zero hours. Although the Court's final fee award for the Anti-SLAPP Motion is

4   less than $50,000, this does not suggest that a fair award for the Anti-SLAPP Motion *and* the time

5   spent negotiating would have been less than $50,000. The Court will not reduce the award for time

6   spent collecting fees on the basis that the final award for the Anti-SLAPP Motion only is less than

7   the compromise offer that encompassed both the Anti-SLAPP Motion and the time spent

8   negotiating.

9        Plaintiffs also argued in the hearing that the award for fee collection should be reduced for

10  the partial success of the Anti-SLAPP Motion. In support of this argument, Plaintiffs cited *Mann* and

11  *Moran v. Endress*. Having reviewed both cases, the Court does not find support for Plaintiffs'

12  argument in either. *Mann* held that a fee award should be reduced for partial success but does not

13  specifically address whether this reduction should apply to time spent pursuing fees. *See Mann*, 139

14  Cal.App.4th at 341–47. *Moran v. Endress* similarly held that an award should be reduced for partial

15  success, but also did not specifically address whether this reduction should apply to efforts to collect

16  fees.[4] *See Moran v. Endres*, 135 Cal. App. 4th 952, 954–56 (Ct. App. 2006). The Court is aware of

17  no authority holding that the fees for efforts to collect fees after a partially successful Anti-SLAPP

18  Motion should be reduced based on the partial success of the initial motion.

19       The Court also considered whether the award for fee collection should be reduced based on

20  the partial success of the instant Motion. Seeing no authority in support of this proposition, the Court

21  holds that the fees should not be reduced in this fashion. The Court's task in evaluating this Motion

22  is to determine a just fee award based on "the number of hours *reasonably* expended multiplied by

23  the *reasonable* hourly rate." *See Ketchum*, 17 P.3d at 743 (emphasis added). Given that the law

---

[4] In *Moran*, the court declined to award *any* fees given the extremely limited success of the motion. 135 Cal. App. 4th at 955 ("To be blunt, defendants' motion accomplished nothing, except that plaintiffs were put to the cost of defending the motion.") So in a technical sense, the *Moran* court reduced both the fees and the award for fee collection. Here, the Court does not find that the Anti-SLAPP Motion accomplished nothing, and therefore Moran provides little guidance as to whether and how to reduce the award for fee collection accordingly.

1   generally holds that time spent collecting fees is compensable, the Court sees no reason to reduce

2   this award simply because the Court determined that a reasonable fee award is less than requested.

3   Such a holding would reduce the fee award beyond the amount derived from the lodestar calculation.

4   The Court will award a just fee for time reasonable spent on fee collection.

5   **G. The Court's fee calculation.**

6       Having reviewed the summary time descriptions of various attorneys, the Court finds it

7   appropriate to base the fees award on the following adjusted totals of hours. As discussed above, the

8   totals for the Anti-SLAPP Motion will be further reduced based on the partial success of the Motion.

9

| Attorney | Time Spent on Anti-SLAPP Motion | | Time Spent on Fee Collection | |
|---|---|---|---|---|
| | Requested Hours | Awarded Hours | Requested Hours | Awarded Hours |
| Nicholas Krebs | 105.2 (ECF No. 63-2 at 13) | 76.3[5] | 111.5 (ECF No. 63-2 at 13) | 75.25[6] |
| Carolyn Woodson | 74.65 (ECF No. 63-3 at 35–39) | 58.1[7] | 20 (ECF No. 63-3 at 35–39) | 20 |
| Daniel McMillan | 14.8 (ECF No. 63-3 at 35–39) | 14.8 | N/A (ECF No. 63-3 at 35–39) | N/A |
| Whitney Thompson | 15.55 (ECF No. 63-3 at 35–39) | 15.55 | 20 (ECF No. 63-3 at 35–39) | 20 |
| Nicholas Rawls | 58.65 (ECF No. 63-3 at 35–39) | 34.9 | N/A (ECF No. 63-3 at 35–39) | N/A |

---

[5] Mr. Krebs's summary time descriptions include significant time on "Fact Investigation/Development" and "Analysis/Strategy." *See* ECF No. 63-2 at 13. These appear to be describing time used on the case as a whole and not just the Anti-SLAPP Motion. Although Mr. Krebs asserts that all of this was time spent "in this matter to prevail on the Anti-SLAPP Motion and collection the fee (ECF No. 63-2 ¶ 36), the facts of the time descriptions suggest otherwise. The Court will award fees for the time Mr. Krebs spent on "Pretrial Pleadings and Motions" (presumably including the 12(b)(6) and Anti-SLAPP), but not for the more general case strategy and background time.

[6] Mr. Krebs's summary time descriptions suggest he spent 72.5 hours meeting and conferring. *See* ECF No. 63-2 at 13. This is far more time than any other attorney spent on fee collection in total. The Court will cut this number in half to reduce it to a reasonable amount of time.

[7] Ms. Woodson's summary time descriptions suggest that she—a partner with nearly twenty years of experience—spent 33.1 hours revising the Anti-SLAPP Motion after Mr. Rawls—a fairly junior associate—spent 47.5 hours writing it. ECF No. 63-3 at 37. The Court finds that this is unusually inefficient. The Court will cut each of these numbers in half to arrive a reasonable fee for the Anti-SLAPP Motion. This note also applies to Mr. Rawls.

| Geoffrey Melkonian | 29.8 (ECF No. 63-4 at 7) | 29.8 | 5.6 (ECF No. 63-4 at 7) | 5.6 |
|---|---|---|---|---|
| Liam Malone | 62.5[8] (ECF No. 63-5 at 35–37) | 47.5[9] | 41.6 (ECF No. 63-5 at 35–37) | 41.6 |
| Stephen Litchfield | 21.55 (ECF No. 63-5 at 35–37) | 6.95 | N/A (ECF No. 63-5 at 35–37) | N/A (ECF No. 63-5 at 35–37) |
| Samuel Muir | 10.7 (ECF No. 63-5 at 35–37) | 0 | N/A (ECF No. 63-5 at 35–37) | N/A (ECF No. 63-5 at 35–37) |

Applying the awarded hours above to the rates the Court previously ordered results in the following fee awards. These numbers have not yet been adjusted to account for the limited success of the Motion or the concession described in Section A.

| Attorney | Rate | Anti-SLAPP Hours | Base Fee Award for Anti-SLAPP (prior to reduction for limited success) | Fee Collection Hours | Fee Award for Fee Collection |
|---|---|---|---|---|---|
| Nicholas Krebs | $ 295 | 76.3 | $ 22,508.50 | 75.25 | $ 22,198.75 |
| Carolyn Woodson | $ 950 | 58.1 | $ 55,195.00 | 20 | $ 19,000.00 |
| Daniel McMillan | $ 1,100 | 14.8 | $ 16,280.00 | 0 | $ - |
| Whitney Thompson | $ 500 | 15.55 | $ 7,775.00 | 20 | $ 10,000.00 |
| Nicholas Rawls | $ 475 | 34.9 | $ 16,577.50 | 0 | $ - |
| Geoffrey Melkonian | $ 500 | 29.8 | $ 14,900.00 | 5.6 | $ 2,800.00 |
| Liam Malone | $ 425 | 47.5 | $ 20,187.50 | 41.6 | $ 17,680.00 |
| Stephen Litchfield | $ 425 | 6.95 | $ 2,953.75 | 0 | $ - |
| Samuel Muir | $ 500 | 0 | $ - | 0 | $ - |
| **Total** | | | **$ 156,377.25** | | **$ 71,678.75** |

As discussed above, the total fee of $156,377.25 spent on the Anti-SLAPP Motion shall be reduced by 2/3 to account for the limited success of the Motion. This results in a total award for the Anti-SLAPP Motion of $52,125.75. This amount shall be further reduced by 12% to account for the

---

[8] The first table of summary time descriptions for Lichfield Law does not differentiate between attorney, and an additional table of summary time descriptions appears incomplete and does not appear to align with the first table. *See* ECF No. 63-5 at 35–37 (first table: Mr. Malone spent 41.6 hours on "Post Hearing activity," second table: Mr. Malone spent 19.3 hours total). The Court's assumption as to the request is based on dividing time associated with multiple attorneys equally between those attorneys. This applies to Mr. Malone, Mr. Litchfield, and Mr. Muir.

[9] Litchfield Law's summary time descriptions include significant time on "Background investigation" and "Strategy Development." *See* ECF No. 63-5 at 35. These appear to be entries for the case as a whole and not just the Anti-SLAPP Motion. This applies to Mr. Malone, Mr. Litchfield, and Mr. Muir.

Professional Defendants concession described in Section A above. This results in a final award for the Anti-SLAPP Motion of $45,870.66. Combined with the $71,678.75 award for the efforts to collect fees, the total award is $117,549.41.

**H. The Court will not hold the fee award in abeyance.**

At the hearing, Plaintiffs requested that the Court hold the fee award in abeyance to be offset against a possible final damages award. Plaintiffs argued that they are seeking damages substantially larger than the Court's fee award. But Plaintiffs could provide no authority suggesting that a fee award should be held in abeyance on this basis. Accordingly, seeing no authority for this proposition, the Court declines to hold the fee award in abeyance.

## CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1. The Professional Defendants' Request for Judicial Notice (ECF No. 63-6) is GRANTED IN PART. The Court will take judicial notice of the existence of the items in question but will not take judicial notice of their contents.

2. The Professional Defendants' Motion for Attorneys' Fees is GRANTED IN PART. The Court ORDERS that within 30 days of this Order, Plaintiffs shall remit to the Professional Defendants $117,549.41 as a fee award based on the success of the Anti-SLAPP Motion and subsequent efforts to collect fees.

IT IS SO ORDERED.

Dated: January 3, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge